IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CURTIS W. BAKER, DMD, | § | |
| Plaintiff, | § | CASE NO |
| vs. | § | 2:05-cv-497-F |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant  Unum Life Insurance Company of America ("Unum Life") files this brief in support of its motion for summary judgment as to all claims and allegations, separately and severally, asserted against it in Counts One (Breach of Contract), Two (Misrepresentation and Fraud) and Three (Bad Faith) of the Complaint of Curtis W. Baker, DMD ("Dr. Baker").  In addition to the pleadings and other papers on file with the Court, Unum Life's motion is based upon admissions made by Dr. Baker during his deposition, the Affidavit of Holly A. Crawford ("Crawford Affidavit") and other supporting materials filed contemporaneously herewith.

**I.  INTRODUCTION**

Unum Life is entitled to summary judgment in its favor with respect to

every claim set forth in Dr. Baker's Complaint: Count One (Breach of Contract), Count Two (Misrepresentation and Fraud) and Count Three (Bad Faith).  As Dr. Baker concedes: (1) the agent who sold him the policies is an honest man and wouldn't misrepresent the policies to him; (2) he did not read his policies at the time he purchased them and concedes that the policies represent contracts which define the obligations of the parties; (3) he does not dispute the terms and conditions contained therein, copies of which are being filed as exhibits hereto; (4) under the undisputed terms and conditions of those policies and based upon Dr. Baker's admitted age (64) at time of claim as well as the nature of his disability (sickness), coverage on Dr. Baker's claim under all 4 of the policies at issue is limited to a maximum benefit period of 24 months; (5) he was paid 24 months of benefits under the policies; and (6) he doesn't see any other provisions in the policies that entitles him to further benefits.

Based upon these admissions, as well as the undisputed terms and conditions of the policies themselves, all three of Dr. Baker's claims for relief must fail and Unum Life is entitled to summary judgment in its favor.

## II.  NARRATIVE SUMMARY OF UNDISPUTED FACTS

A.  Purchase of the Policies.

Dr. Baker is a 68 year-old retired doctor of dental medicine.  (October 5, 2005 Deposition of Dr. Curtis Baker ("Baker Depo."), pertinent portions of which are being filed as an exhibit hereto, at pp. 9, 27-28).  Dr. Baker has testified that he feels sure that he received copies of the four subject policies at or about the time

they were issued, but admitted that it would not have been his practice to read them when he received them, even though he was capable of reading them. (*Id.* at pp. 126-127). When asked if he has ever had any other disability insurance, aside from coverage in place at the time of his alleged disability, Dr. Baker testified as follows: "Years ago, I did. I don't remember when it was. I do remember that it had a lifetime disability in it though, and I honestly thought that's what this was. I didn't read things like I should have." (*Id.* at p. 85). When asked if he still felt that the policies mentioned in his complaint provided lifetime benefits, he testified as follows: "I haven't really read them that closely. I don't know what I've got." (*Id.* at p. 86). After testifying that he "specifically told his agent [Jim Large] that [he] wanted disability insurance that would cover [him] for life if [he] were unable to practice dentistry" and that he thought that's what he was getting, Dr. Baker further testified as follows: "Now, in his defense, Jim tells me that he told me that this was not for life. I don't remember that, but I believe he's an honest man. I don't think he would misrepresent it for me." (*Id.* at pp. 86-87).

B. Terms and Conditions of the Policies.

In his Complaint, Dr. Baker asserts a claim for benefits under three different disability policies, a business overhead policy and "one or more lifetime rider policies." (Complaint at par. 3). However, Dr. Baker has testified that he is not sure what his Complaint means by its reference to "one or more lifetime rider policies." (Baker Depo. at p. 122).

It is not disputed that Dr. Baker became disabled by meningitis on

December 18, 2002. (Complaint). He was sixty-four years old at the time and turned sixty-five on February 5, 2003. (Baker Depo. at p. 132). Dr. Baker and his attending physician both admit that Dr. Baker's disability claim arises out of a sickness – bacterial meningitis. (Baker Depo. at pp. 102-105; Claim Forms, true and correct copies of which are filed as an exhibit hereto, at UACL00076). Unum Life accepted the claim and began paying benefits under each of the policies. (Crawford Affidavit at par. 3).

The first disability policy, number H0601154 ("Policy 1", a true and correct copy of which is being filed as an exhibit hereto), was issued by New York Life in 1966.[1] Where, as here, Plaintiff became totally disabled after age 60 due to a sickness, Policy 1 pays benefits in the amount of $700.00 per month for a maximum of twenty-four months. (See Policy 1 at p. NYLP001).

The second disability policy, number LAD169168 ("Policy 2", a true and correct copy of which is being filed as an exhibit hereto) was issued by Unum Life in 1992. (Policy 2 at ULP0002). Where, as here, Plaintiff became totally disabled after age 60 due to sickness, Policy 2 pays benefits in the amount of $2,080.00 per month for a maximum of twenty-four months. (See Policy 2 at pp. ULP0004-5 and ULP0019).

The third disability policy, number LAN550174 ("Policy 3", a true and correct copy of which is being filed as an exhibit hereto) was issued by Unum Life

---

[1] As noted in Paragraph 3 of the May 24, 2005 Declaration of Sandra L. Giordano previously filed with this Honorable Court as Exhibit B to Unum Life's Notice of Removal, the subject policy "was issued by New York Life, though the claim was administered by UnumProvident or a subsidiary thereof."

in 1976. (Policy 3 at p. ULP2002). Where, as here, Plaintiff became totally disabled after the age of 60 as the result of a sickness, Policy 3 pays benefits in the amount of $2,000.00 to the later of age 65 or 24 months after payments begin. (Policy 3 at p. ULP2001.5-ULP2003).

In the event of a sickness claim[2] arising after age 60, none of the three disability policies referenced above pay benefits beyond age 65 or for 24 months, whichever is greater. (Policy 1 at p. at p. NYLP001, Policy 2 at pp. ULP0004-5 and ULP0019, and Policy 3 at p. ULP2001.5-ULP2003). In this case, 24 months would be the greater period.

The Business Overhead Policy, number LAN550175 ("Policy 4," a true and correct copy of which is being filed as an exhibit hereto) was issued by Unum Life in 1976. (Policy 4 at p. BOE1003). The Business Overhead Policy pays $1,000.00 per month for a maximum period of twenty-four months. (*Id.*). Thus, each of the four subject policies provided a maximum benefit period of twenty-four months and, as is more fully set forth below, Dr. Baker was paid twenty-four months worth of benefits, and then some, under the policies. (See Crawford Affidavit at par. 8).

---

[2] During his deposition, Dr. Baker admitted that he was not disabled as the result of an accident or injury and that he certainly was not disabled as the result of bodily harm caused by an accident. (Baker Depo. at pp. 56-57). Instead, he was disabled by sickness related to bacterial meningitis. (*Id.* at p. 51). Thus, he does not qualify for accidental benefits coverage. (See Policy 2 at pp. ULP0008 and ULP0017). Dr. Baker's doctor further noted that Dr. Baker's condition was due to "sickness" rather than "accident." (See Claim Forms at UACL00076).

C.  Plaintiff's Claim for Benefits Under the Policies.

On February 25, 2003,  Unum Life wrote to advise Dr. Baker on the status of his claim. (See February 25, 2003 Letter, a true and correct copy of which is being filed as an exhibit hereto, at page 1; Crawford Affidavit at par. 4).  In that correspondence, Unum Life noted that Policy 1 ( number HO 601154) had a maximum benefit period to either age sixty-five or a minimum of twenty-four months.  As noted above, Dr. Baker admits that he received benefits for twenty-four months under Policy 1 and does not contend that he is entitled to any further benefits thereunder. (Baker Depo. at pp. 134-138).

In that same February 25, 2003 correspondence, Unum Life further advised Dr. Baker that the maximum benefit period under Policy 2 (number LAD169168)[3] was the later of twenty-four months or his reaching age sixty-five.  (February 25, 2003 Letter at pages 2 and 3).  Again, Dr. Baker admits that the letter so advises and further admits that he received twenty-four months of benefits under Policy 2. (Baker Depo. at pp. 149-154).  In this regard, Dr. Baker asserts that the wording of the lifetime sickness provision in Policy 2 (number LAD169168) is "a little unfair," contending that it was not specifically pointed out that he "had to get sick before age sixty or by age sixty" to benefit from that lifetime sickness provision.  (Baker Depo. at pages 148-150).   However, he concedes that, although he had the

---

[3] The February 25, 2003 letter identifies the policy by claim number and, as referenced in paragraph 13 of Plaintiff's Complaint, the claim under policy no. LAD169168 (Policy 2) was assigned claim number CLA023990, the claim under policy no. LAN550174 (Policy 3) was assigned claim number CLA023991, and the claim under policy no. LAN550175 (Policy 4) was assigned claim number CLA023992.  (Complaint at Para. 13).

opportunity to do so, he never read the policy and has undertaken no analysis of its provisions. (*Id.* at pp. 142-152). Dr. Baker further conceded upon reviewing Policy 2 during his deposition, that the lifetime sickness provision does point out, in at least three separate places, that it pays lifetime benefits only for sickness that begins before the insured reaches age 60. (Baker Depo. at pp. 142-152). Indeed, the policy schedule at the beginning of Policy 2 expressly states that lifetime monthly sickness benefits apply to "sickness before age 60." (Policy 2 at p. ULP0005).

Furthermore, the Lifetime Sickness Benefit Rider itself expressly states, both in the body of the heading for the rider, which is in bold type, and within the body of the rider, that lifetime sickness benefits are "payable for sickness which begins before the policy anniversary when [insured's] age is 60" and where disability is "the result of sickness which began before the policy anniversary when your age was 60." (Policy 2 at p. ULP0019). The same rider also states that coverage under the rider "terminates on the policy anniversary when your age is 60," unless you are already disabled at the time. (*Id.*). After reviewing the policy, Dr. Baker admitted that the policy actually says he would have had to get sick before age 60 to recover benefits under the rider. (Baker Depo. at 148-150).

Dr. Baker further admits that the lifetime sickness provision was only one aspect of the policy and that the policy certainly had value beyond the lifetime sickness provision. (*Id.* at pp. 153-154). In fact, he admits that he actually received twenty-four months worth of benefits under the terms of the policy even though he

didn't qualify for lifetime sickness benefits because his sickness began after he reached age 60. (*Id.*).[4]

In his Complaint, at paragraph 7, Dr. Baker alleges that Unum Life initially denied his request for benefits under the Loss of Use provision in Policy 2 (number LAD169168), but then determined that he was entitled to that benefit. (Complaint, at Paragraph 7). The Loss of Use provision entitles an insured to receive benefits during a policy's elimination period, here three months, if the insured suffers a "total loss of use" of "hearing in both ears." (Crawford Affidavit at par. 5 and Policy 2 at p. ULP0011). However, the Loss of Use Provision expressly states that total payments are still limited by the Maximum Benefit Period,[5] here 24 months. (*Id.*). Additionally, in its letter to Dr. Baker of June 28, 2004 (June 28, 2004 Letter, a true and correct copy of which is being filed as an exhibit hereto), advising Dr. Baker that he would receive loss of use benefits, Unum Life specifically pointed out that, pursuant to the terms and conditions of the policy, loss of use benefits were explicitly limited by the twenty-four month maximum benefit period. (See Crawford Affidavit at par. 5; June 28, 2004 Letter at p. 2).

In fact, it is undisputed that an additional $6,000.00 payment was in fact

---

[4] During this deposition, Dr. Baker also asserted initially that Policy 2 should have provided benefits to age seventy-five based upon language stating that the policy is renewable to age seventy-five. (Baker Depo. at p. 139). However, upon closer review of the "renewable to age seventy-five" language upon which he initially based that contention, Dr. Baker admitted that he was never employed at least 30 hours per week after reaching age 65, a clear prerequisite to further benefits under that provision. (*Id.* at pp. 140-142).

[5] The Multiple Benefits provision of the policy further clarifies that the total disability benefit and loss of use benefit combined "shall not exceed the Maximum Benefit Period." (Policy 2 at ULP0011).

made to Dr. Baker under the subject loss of use provision in July of 2004, for the period from December 19, 2002 to March 19, 2003 (the elimination period). (Crawford Affidavit at par. 6). Thereafter, Unum Life  paid benefits for the full twenty-four months after expiration of the elimination period, mistakenly overlooking the fact that it had already paid benefits for the elimination period in July, 2004. (*Id*.). Thus, Dr. Baker has actually been overpaid benefits under Policy 2. (*Id*.).

In its February 25, 2003 correspondence, Unum Life advised Dr. Baker that Policy 3 (number LAN550174) provides a maximum benefit for the later of twenty-four months or his reaching age 65. (February 25, 2003 Letter at page 2). Dr. Baker does not deny that the letter so advised and does not deny that he received twenty-four months of benefits under that policy. (Baker Depo. at pp. 159-160). After reviewing Policy 3 at his deposition, Dr. Baker admitted that he didn't see anything else in the policy that he contends entitles him to further benefits. (*Id.* at p. 165).

Finally, with regard to Policy 4 ( BOE Policy number LAN550175), Dr. Baker admitted that the policy provides a maximum of twenty-four months benefits and that Unum Life paid him those benefits. (Baker Depo. at p. 166). At his deposition, Dr. Baker admitted that he is not aware of any additional provisions under that policy that entitle him to further benefits. (*Id.* at 167-168).

Remarkably, Dr. Baker testified that he had not undertaken an analysis of whether he is entitled to further benefits under the subject policies. (Baker Depo.

at p. 167).  He further admitted that he is not aware of whether anyone has undertaken such an analysis, though he admits it might have been a good thing to do before filing a complaint.  (*Id.*).  Dr. Baker testified that "I don't want anything I'm not entitled to and explained that "it would be a big help to me if there was some way that some of these policies could give me more benefits.  If there isn't then my tough luck."  (*Id.* at pp. 164-165).

After going through the provisions of each of the four policies referenced in his complaint, Dr. Baker testified that he could not explain his contention that there had been a breach of contract.  (*Id.* at p. 169).  He further admits that he understands that the policies were contracts between him and the insurance company and that the language of the contracts, including the maximum benefit provisions, governs the obligations of the parties.  (*Id.* at p. 170).

In September of 2004, Unum Life calculated the amount of benefits that Dr. Baker would be due through the termination of the 24 month maximum benefit periods and offered to pay him that full amount, in advance.   (See Crawford Affidavit at par. 7; September 1, 2004 letter, a true and correct copy of which is being filed as an exhibit hereto).   While his Complaint purports to attribute some ill will to Unum Life making an advanced payment, lump sum offer, Dr. Baker admitted in his deposition that he doesn't see anything wrong with the offer, and further testified that he is not claiming that there was anything wrong with the offer of advanced payment.  (Baker Depo. at pp. 172-173).  In fact, Dr. Baker admitted that Unum Life was (in effect) telling him that it didn't think

he was going to recover from his condition and was, therefore, willing to go ahead and pay him in advance.  (*Id.* at p. 175).   He further admits that he was not damaged by Unum Life's offer. (*Id*. at pp. 175 – 176).

Dr. Baker turned down the offer of a lump sum payment, electing instead to receive payments under the policies over time.  (*Id.* at p. 178).   While the Complaint alleges that Unum Life committed fraud by admitting that it owed a set amount in its September 1, 2004 letter (the lump sum payment offer) and subsequently advising, in December of 2004 (after the lump sum payment offer had been declined by Dr. Baker), that it would make no further payments beyond the 24 month maximum benefit period which expired in 2005, Dr. Baker  admits that he doesn't contend that Unum Life should have both made an advanced lump payment and then also still paid him benefits over time.  (*Id*. at p. 178).   Also, contrary to the assertion of Paragraph 14 of the Complaint, Dr. Baker testified that he did not become aware, in December of 2004, of "a fraud worked upon him." (*Id.* at 177-178).

In fact, as noted above, Dr. Baker admits that there was no misrepresentation associated with Unum Life's offer to either pay him in a lump sum or to instead pay the benefits over time.  (Baker Depo. at p. 183).   He further admits that Unum Life continued to pay him benefits after the September 1, 2004 lump sum offer, and that he in fact did receive twenty-four months of benefits under all four policies. (*Id.* at p. 187).   Despite alleging in the Complaint that Unum Life changed one or more of his lifetime rider policies, Dr. Baker testified

at his deposition that he is not aware of any evidence that Unum Life in fact changed any lifetime rider. (*Id.* at 192).

Regarding his claims of misrepresentations, Dr. Baker believes that his agent, Jim Large, "or the guy he introduced to me" may have misrepresented the policies back when he purchased them in 1966, 1976 or 1992.  (*Id.* at pp. 194-196).  He couldn't recall the identity of the "other guy," but doesn't claim that misrepresentations have been made since 1992.  (*Id.* at pp. 197-199).  When asked specifically what Jim Large or this other guy misrepresented, Dr. Baker testified as follows:  "They probably said okay, because I said I wanted insurance that will cover me if I am disabled and unable to practice dentistry.  And I want this for lifetime if I'm disabled for lifetime.  He said okay."  (*Id.*).

Dr. Baker did not recall the agent explaining the particulars of the lifetime sickness rider, though he admits that it is possible that the provisions were further explained to him and that he simply doesn't remember.  (*Id.* at pp. 201, 205-206).  At any rate, Dr. Baker admits that the particulars are set forth in the policies that he received.  (*Id.* at 201).

Significantly, Dr. Baker does not believe that either Jim Large or this other fellow intended to mislead or deceive him, or otherwise intended not to provide the coverage that he wanted.  (*Id.* at pp. 204-206).  Moreover, Dr. Baker does not offer any evidence that Unum Life or any of its agents intended, at the time of the alleged misrepresentation, not to pay a legitimate claim for benefits that he might make in the future. (*Id.*).

# III.  ARGUMENT

For the reasons set forth herein, Unum Life is entitled to summary judgment in its favor with respect to all claims set forth in the Complaint.

### A.    Dr. Baker's Admissions Establish Unum Life's Position That Maximum Benefits Have Been Paid Under All Four Policies At Issue (Count One -Breach of Contract).

As outlined above, based upon Dr. Baker's own admissions, together with the undisputed terms and conditions of the subject policies, Count I of the Complaint (Breach of Contract) lacks any basis and should be dismissed as a matter of law.[6]   To summarize the undisputed facts set forth above, Dr. Baker concedes: (1) the terms and conditions of the subject policies, copies of which are being filed as exhibits hereto; (2) that his disability arose out of a sickness when he was 64 years old; (3) where, as here, total disability due to sickness occurs after age 60, the policies provide a maximum benefit period of twenty-four months; and (4) Unum Life paid Dr. Baker benefits for a period of twenty-four months under each of the subject policies. (Baker Depo. at p. 187).

Dr. Baker testified that he could not explain his contention that there has been a breach of any contract.   (*Id.* at p. 169).   He further admits that he understands that the policies were contracts between the insured and the insurance

---

[6] In order to prevail on a claim for breach of contract under Alabama law, a plaintiff must establish: (1) a valid and enforceable contract; (2) the terms and conditions of the contract; (3) a breach of the contract; and  (4) damages.   *See*, *e.g*., *Whaley v. Sony Magnetic Products, Inc*., 894 F.Supp. 1517, 1526 (M.D. Ala. 1995).

company and that the language of the contracts, including the maximum benefit provisions, governs the obligations of the parties. (*Id.* at p. 170). While he asserted that he would like to receive additional benefits under the policies, Dr. Baker was unable to identify any rider or policy provision under which he is entitled to further benefits. (Baker Depo. at pp. 138, 150-151, 165 and 168).

Taken in their totality, Dr. Baker's admissions when read in light of the undisputed terms and conditions of the policies at issue, require the conclusion that Dr. Baker has been paid all benefits due under the four policies (as well as an overpayment of $6,000). Therefore, Unum Life is entitled to summary judgment in its favor with respect to Count One of the Complaint.

### B.    Count Two (Misrepresentation and Fraud).

In light of the significant admissions made at his deposition, Dr. Baker's misrepresentation and fraud claims likewise lack any merit. Even absent these admissions, however, those claims are barred by the applicable two-year statute of limitations.

### 1.    No Actionable Fraud Occurred.

Even if his insurance agent said just what Dr. Baker contends, there was no actionable misrepresentation or fraud. In this regard, when questioned about the only alleged misrepresentation, Dr. Baker testified as follows: "They probably said okay, because I said I wanted insurance that will cover me if I am disabled and unable to practice dentistry. And I want this for lifetime if I'm disabled for lifetime. He said okay." (Baker Depo. at pp. 197-199).

Even if this statement was actually made, it does not rise to the level of actionable misrepresentation or fraud because the statement is not false.  A lifetime sickness rider was in fact furnished under Policy 2 (number LAD169168).  However, that rider distinguishes between disabilities that arise before age 60 (which would entitle the insured to lifetime benefits) and those that arise after age 60 (which provide a maximum benefit period to either age 65 or for 24 months, whichever is longer).  (See Policy 2, at p. ULP0019).  Significantly, Dr. Baker testified that he did not recall the agent explaining the particulars of the lifetime sickness rider, although he admitted it was possible that the provisions were further explained to him and that he simply does not remember.  (Baker Depo. at pp. 201, 205-206).

Additionally, Dr. Baker was furnished with a lifetime accident rider.  For instance, Policy 2 (number LAD169168) contained a lifetime accident benefit rider.  (See Policy 2 at p. ULP0017).  Dr. Baker did not qualify for such benefits, however, since he did not meet prerequisites for this coverage inasmuch as he admits that he was not disabled as the result of an accident or injury, and that he certainly was not disabled as the result of bodily harm caused by an accident.  (Baker Depo. at pp. 56-57).

Based upon Dr. Baker's admissions as set forth above, there was neither an actionable misrepresentation nor fraud and Unum Life should be granted judgment in its favor on Count Two of the Complaint.  *See, e.g., Johnson v. Anderson Ford, Inc.*, 686 So. 2d 224, 230 (Ala. 1996) (if the evidence reveals

that only true representations were made to the plaintiff, no cause of action for misrepresentation exists); *Ex parte Ikner*, 682 So. 2d 8, 10 (Ala. 1996) (Blue Cross did not misrepresent the fact that Ikner had insurance, because that fact was true). Furthermore, Dr. Baker's contention that the policies did not live up to Unum Life's promises or to the agent's representations is, essentially, a promissory fraud claim. In other words, he is alleging a representation relating to the policy's future performance when and if he were to make a claim on the subject policy. The elements Dr. Baker must prove to establish a claim for promissory fraud include: (1) a misrepresentation; (2) of a material existing fact; (3) on which the plaintiff relied; and (4) which proximately caused injury or damage to the plaintiff. *Johnston v. Green Mountain, Inc.*, 623 So. 2d 1116, 1121 (Ala. 1993). "Also, to support a claim for promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff." *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998). Under Alabama law, to avoid summary judgment on such a claim, Dr. Baker is required to present more evidence than simply the allegation that the alleged promise was not later kept:

> The burden is on the plaintiff to prove when the promise was made that the defendant intended to deceive. *Martin v. American Medical Int'l, Inc.*, 516 So. 2d 640 (Ala. 1987); *P&S Bus., Inc. v. South Cent. Bell Tel. Co.*, 466 So. 2d 928 (Ala. 1985). The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute fraud. *Purcell Co. v. Spriggs Enterprises, Inc.*, 431 So. 2d 515, 519

(Ala. 1983).   It is well settled that "a jury does not have untrammeled discretion to speculate upon the existence of [the requisite] intent [for promissory fraud]."   There must be substantial evidence of a fraudulent intent that existed when the promise was made.  *Martin*, 516 So. 2d at 642 (quoting *Purcell Co*., 431 So. 2d at 519).

*Goodyear Tire*, 719 So. 2d 774, 776 (Ala. 1998).   In the instant action, Dr. Baker testified that he has no evidence that, at the time that he purchased the policies, Unum Life did not intend to perform in accordance with the terms contained therein.  (Baker Depo. at 204-206).  He further admits that he has no evidence that the agent or any defendant intended to deceive him.  (*Id.*).

In essence, the real assertion by Dr. Baker is a failure of performance, which Unum Life disputes.  As noted above, "[t]he plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud."  *Goodyear*, 719 So. 2d at 776.   Furthermore, it is clear that a reckless, negligent or innocent misrepresentation cannot constitute fraud where the alleged misrepresentation relates to some future event.  *Russellville Production Credit Assoc. v. Frost*, 484 So. 2d 1084, 1087 (Ala. 1986).

### 2. The Fraud Claims are Barred by the Applicable Statute of Limitations.

Finally, Dr. Baker's misrepresentation and fraud claims are barred by the applicable two-year statute of limitations.  Dr. Baker admits that he received copies of his policies at or about the time that he purchased them in 1966, 1976 and 1992, but that it would not have been his practice to read them even though he

was capable of doing so. (Baker Depo. at 126-127). He further admits that the language of the contracts, including the maximum benefit provisions, governs the obligations of the parties. (*Id.* at p. 170).

Despite this understanding, Dr. Baker admitted that he "didn't read things like [he] should have" and further explained, regarding the subject policies, as follows: "I haven't really read them that closely. I don't know what I've got." (*Id.* at pp. 85- 86).

The statute of limitations for fraud claims is two years. *Ala. Code* Section 6-2-38(l). The limitations period for a fraud claim begins to run when the fraud is discovered or should have been discovered. *Kelly v. Connecticut Mut. Life Ins. Co.*, 628 So.2d 454, 459-60 (Ala.1993). In this regard, a fraud is deemed to have been discovered, thereby starting the running of the limitations period, when it ought to have been discovered – "that is, at the time of the discovery of facts that, on the part of a person of ordinary prudence, would provoke inquiry that, if followed up, would lead to the discovery of the fraud." *Fabre v. State Farm Mutual Automobile Ins. Co*., 624 So. 2d 167, 168 (Ala.1993). Fraud is discovered as a matter of law when one receives documents that would put one on notice of the alleged fraud. *Id. See also Nichols v. Life Ins. Co. of Georgia*, 701 So. 2d 1126, 1131 (Ala. Civ. App. 1997).

Here, Dr. Baker, through receipt of his policies in 1966, 1976 and 1992, was on notice at that time of the exact nature of the coverage provided in the policies. To the extent he claims that the coverage afforded under the policies

differed in any way from any representation made to him, Dr. Baker should have discovered this in 1966, 1976 and 1992, when he received them. *See, e.g., Fowler v. Provident Life and Accident Ins. Co.,* 256 F. Supp. 2d 1243, 1249 (N.D. Ala. 2003).

Furthermore, Unum Life's February 25, 2003 letter to Dr. Baker (See February 25, 2003 Letter) summarized the benefits to which he would be entitled under the policies. That letter, which preceded the filing of this lawsuit, in April of 2005, by more than two years, clearly put Dr. Baker on notice by setting forth the maximum benefit periods for the policies and advising Dr. Baker that he was entitled to a maximum of twenty-four months worth of benefits under the policies. To the extent he claims to be entitled to more, he should have read either the policies themselves or the February 25, 2003 letter and determined that his understanding was inconsistent with the policy language and Unum Life's position.

Based upon the foregoing analysis, Unum Life is entitled to summary judgment in its favor with respect to Count Two of the Complaint (Misrepresentation and Fraud).

C.    **Dr. Baker's Admissions Establish, as a Matter of Law, That Unum Life Is Entitled To Judgment On Count Three Of The Complaint (Bad Faith).**

Unum Life is also entitled to summary judgment in its favor on Count Three of the Complaint (Bad Faith) because there is absolutely no evidence that it

acted in bad faith.  In any event, Dr. Baker's bad faith cause of action is barred by the applicable two-year statute of limitations.

### 1. Plaintiff Does Not Present Any Evidence Of Bad Faith.

Dr. Baker cannot prevail on his claim of bad faith since he was not able to articulate any meritorious claim that Unum Life breached any of the subject contracts by failing to pay valid claims thereunder, much less that it breached any contract in bad faith.  Indeed, the evidence in this case reflects that Unum Life accepted Dr. Baker's claims, and based upon the undisputed terms and conditions of the policies, paid the maximum benefits to which Dr. Baker was entitled thereunder.

Dr. Baker is not able to point to any language in the policies that entitles him to further benefits, and so admitted at his deposition.  (Baker Depo. at pp. 138, 150-151, 165 and 168).  The plain language of the policies themselves provided a reasonable and legitimate basis for paying no further benefits beyond their twenty-four month maximum benefit periods.  The Alabama Supreme Court has consistently held that when a claim is fairly debatable, an insurer is entitled to debate it.

Indeed, under Alabama law, a plaintiff alleging bad faith must show: (1) that there was an insurance contract between the parties; (2) an intentional refusal to pay the insured's claims; (3) the absence of any reasonably legitimate or arguable reason for that refusal; (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (5) if the intentional failure to determine

the existence of a wrongful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.  *See, e.g., National Sec. Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982).  Additionally, "[t]o prove a bad faith claim, a plaintiff must go beyond merely showing non-payment; *i.e.*, it is incumbent on the plaintiff to show that the insurance company had no legal or factual defense to the claim." *Emanuelsen v. State Farm Auto Ins. Co.*, 651 So.2d 29, 31 (Ala. Civ. App. 1994).  Furthermore, a plaintiff must show that the insurer had actual knowledge that it had no legitimate or arguable reason to deny the claim.  *Thomas v. Principle Fin. Group*, 566 So.2d 735, 741 (Ala. 1990).  In *Thomas*, the court noted that the term "actual knowledge" implies conscious wrongdoing and noted that bad faith "is not simply bad judgment or negligence.  It imports a dishonest purpose and means a breach of known duty, *i.e*., good faith and fair dealing, through some motive of self-interest or ill will." *Thomas*, 566 So.2d at 741.

The Alabama Supreme Court has also held as follows: "When a claim is 'fairly debatable' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *American General Life & Acc. Ins. Co. v. Lyles*, 540 So.2d 696, 698 (Ala. 1988). *See also, Waldon v. Cotton States Mut. Ins. Co.*, 481 So.2d 340, 341 (Ala. 1985) (noting that "[a]s the history of Alabama's bad faith cases amply demonstrates, this Court with purposeful design, has restricted the application of the bad faith doctrine to those rare and extreme cases where the

insurance carrier, without debatable excuse, either fails to process a claim or, upon processing, fails to pay a claim for benefits as provided by the policy.").

In this case, Unum Life relied upon the express language of the policies and paid benefits for the maximum benefit periods contained therein.  Indeed, after reviewing the language of the policies during his deposition, Dr. Baker admitted that each of the four subject policies provided a maximum benefit period of twenty-four months and further admits that he received benefits for twenty-four months under each of the four policies. (Baker Depo. at p. 187).  Dr. Baker could not locate any other policy provisions or riders under which he qualified for further benefits.  (Baker Depo. at pp. 138, 150-151, 165 and 168).

Because Alabama law is clear that, where a claim is "fairly debatable," the insurer is entitled to debate it, Unum Life is entitled to summary judgment on Dr. Baker's third cause of action (bad faith).

**2.        The Bad Faith Claims are Barred by the Statute of Limitations.**

Notwithstanding the undisputed facts noted above, Unum Life is further entitled to summary judgment on grounds that Dr. Baker's bad faith claim is barred by the applicable two-year statute of limitations.  Under Alabama law, the statute of limitations for bad faith claims is two years.  *Shoreline Towers Condominium Owners Assoc., Inc. v. Zurich American Ins. Co.*, 196 F. Supp. 2d 1210, 1216 (S.D. Ala. 2002); *Alfa Mutual Insurance Company v. Smith*, 540 So. 2d 691, 692-693 (Ala. 1989).  Furthermore, "[t]he cause of action for bad faith accrues upon the event of bad faith refusal, or upon the knowledge of facts which

would reasonably lead the insured to a discovery of bad faith refusal." *Shoreline*, 196 F. Supp. 2d at 1216.

In this regard, Unum Life sent Dr. Baker correspondence dated February 25, 2003, summarizing the maximum benefits to which he would be entitled under the subject policies. (See February 25, 2003 Letter). That correspondence, which preceded the filing of this lawsuit in April of 2005 by more than two years, clearly put Dr. Baker on notice such that any bad faith cause of action would begin to accrue at that point.

While Dr. Baker's bad faith claim lacks any detail, to the extent that he claims Unum Life failed, in bad faith, to pay more than twenty-four months worth of benefits, Dr. Baker had knowledge, by virtue of the February 25, 2003 letter, of Defendant's position more than two years before filing the Complaint. Thus, his bad faith claims are barred by the statute of limitations and Unum Life is entitled to summary judgment in its favor with respect to Count Three of the Complaint.

## IV.  CONCLUSION

Based upon the foregoing, Unum Life is entitled to summary judgment in its favor with respect to Counts One (Breach of Contract), Two (Misrepresentation and Fraud) and Three (Bad Faith) of the Complaint, and respectfully requests that the Court issue judgment in its favor.

/s/ Douglas W. Fi nk
Douglas W. Fink    dfink@handarendall.com
Henry T. Morrissette    hmorrissette@handarendall.com
Attorneys for Defendant
 Insurance Company of America

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
Phone: (251) 432-5511
Fax:    (251) 694-6375

## CERTIFICATE OF SERVICE

I hereby certify that on this day, April 18, 2006 I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following:

Joel S. Rogers, III            joelrogers@bellsouth.net
Amy I. Rogers            amyirogers@bellsouth.net

/s/ Douglas W. Fink
Douglas W. Fink        Bar No. 42920
Attorney for Defendant
        HAND ARENDALL, LLC
        Post Office Box 123
        Mobile, Alabama  36601
        Phone:    (251) 432-5511
        Fax:        (251) 694-6375
        E-mail: dfink@handarendall

462624_1

- 24 -