# NEW YORK LIFE

INSURANCE COMPANY *will pay* the benefits provided in this policy, subject to the provisions, definitions, conditions, exceptions, limitations and reductions set forth on this and the following pages, all of which are a part of this policy

| | |
|---|---|
| **POLICY NUMBER** | H- 0601154 |
| **INSURED** | CURTIS W. BAKER |
| **OWNER** | INSURED |
| **POLICY DATE** | MAY 1, 1966 |

**BENEFITS**

BENEFIT 1. MONTHLY INCOME FOR TOTAL DISABILITY   $700.00

Income Commencement Date for Continuous Period of —
  Accident Total Disability — 31st   day of such period
  Sickness Total Disability — 31st   day of such period
Maximum Benefit Period for —
  Accident Total Disability — Lifetime
  Sickness Total Disability — but not less than 2 years to age 65

BENEFIT 2. MONTHLY INCOME FOR ACCIDENT PARTIAL DISABILITY   $350.00
Income Commencement Date for Continuous Period of Such Disability —
  31st   day of such period (Date subject to deferment while Benefit 1 is payable)
Maximum Benefit Period — 6 months

BENEFIT 3. WAIVER OF PREMIUM FOR TOTAL DISABILITY

**RENEWABILITY** Non-cancellable and guaranteed renewable to age 65, as provided in the Renewal Privilege

**POLICY EXAMINATION PRIVILEGE** Within the 10 day period after delivery of the policy, it may be surrendered to the Company by mailing or delivering it to the Company's Home Office, or a General Office, or to the Field Underwriter through whom application for it was made and, in such event, the Company will immediately refund any premium paid for it. Upon any such surrender, the policy shall be deemed void from the start.

**PREMIUM SCHEDULE** PREMIUMS PAYABLE AT   C   INTERVALS, AS FOLLOWS

Beginning as of   Specific amounts included in premium for stated supplementary benefits
Mo. Day Year   Premium
5/1/66   31.43
5/1/03   (Age 65) Premiums Cease, Insurance Terminates



This policy is executed as of the policy date.



PRESIDENT

SECRETARY

COUNTERSIGNATURE

PREMIER INCOME PROTECTOR POLICY
NON-CANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65
6695-1



DEFENDANT'S EXHIBIT

NYLP001

## DEFINITIONS

**Total Disability**

The term "total disability", as used in this policy, means the complete inability of the Insured to perform any and every duty pertaining to his occupation except where that disability has continued for more than a total of five years after the income commencement date applicable to it under Benefit 1. After the Insured has been so disabled for five years, that disability will continue to be considered "total disability" only if the Insured is unable to engage for remuneration or profit in any and every occupation or business for which he is reasonably fitted by education, training or experience.

*Double Dismemberment Defined as Total Disability.* The loss, by actual severance through or above the wrist or ankle joints, of both hands, both feet or one hand and one foot, or the total and irrecoverable loss of the sight of both eyes will be regarded as total disability in any event.

**Partial Disability**

The term "partial disability", as used in this policy, means the complete inability of the Insured to perform one or more of the important daily duties pertaining to his occupation.

**Injury**

The term "injury", as used in this policy, means accidental bodily injury to the Insured which occurs while this policy is in force.

**Accident Total Disability**

Any reference in this policy to "accident total disability" means total disability which (i) results, directly and independently of all other causes, from an injury which requires and receives treatment by a physician other than the Insured and (ii) begins within ninety days after the accident causing such injury.

**Accident Partial Disability**

Any reference in this policy to "accident partial disability" means partial disability which (i) results, directly and independently of all other causes, from an injury which requires and receives treatment by a physician other than the Insured and (ii) begins within ninety days after the accident causing such injury.

**Sickness**

The term "sickness", as used in this policy, means sickness or disease of the Insured which is contracted and begins while this policy is in force.

**Sickness Total Disability**

Any reference in this policy to "sickness total disability" means total disability which (i) results from a sickness which requires and receives treatment by a physician other than the Insured and (ii) begins while this policy is in force.

Total disability which results from injury but begins more than ninety days after the accident causing the injury will be regarded as "sickness total disability" if it begins while this policy is in force and requires and receives treatment by a physician other than the Insured.

**Age 65**

The term "age 65", as used in this policy, means the policy anniversary on which the Insured's age, nearest birthday, is 65.

## BENEFIT PROVISIONS

**Benefit 1. Monthly Income for Total Disability**

The Company will pay this benefit for each continuous period of either accident or sickness total disability which exists on the applicable income commencement date. It will be equal to the monthly income for total disability, as shown on the first page of this policy, for each full month (one-thirtieth of said monthly income per day for less than a full month) during which the total disability continues without interruption, beginning with such income commencement date. However, no benefit will be paid for more than the applicable maximum benefit period on account of any one continuous period of such total disability.

The income commencement dates and maximum benefit periods applicable to this Benefit 1 also are shown on the first page of this policy. No benefit period for sickness total disability will continue beyond age 65 except where this would result in income payments for less than two years, in which case the applicable maximum benefit period for such disability will be two years.

**Benefit 2. Monthly Income for Accident Partial Disability**

The Company will pay this benefit for each continuous period of accident partial disability which exists on the applicable income commencement date. It will be equal to the monthly income for accident partial disability, as shown on the first page of this policy, for each full month (one-thirtieth of said monthly income per day for less than a full month) during which the partial disability continues without interruption, beginning with such income commencement date. However, no benefit will be paid for more than the applicable maximum benefit period on account of any one continuous period of such partial disability.

The income commencement date and maximum benefit period applicable to this Benefit 2 also are shown on the first page of this policy.

The determination of benefits under this Benefit 2, in the case where a period of accident partial disability follows immediately after the Insured's recovery from total disability which resulted from the same injury, will take into account that any "total disability" will also satisfy the definition of "partial disability" and that the partial disability will always coexist with, and continue without interruption throughout, any period of continuous total disability.

However, under no circumstances shall this Benefit 2 be payable for any period for which a total disability benefit is payable under Benefit 1 of this policy. Also, where the income commencement date for a continuous period of accident partial disability would otherwise occur during a period for which any such total disability benefit is payable, such income commencement date will be deferred to the first day of the period of accident partial disability for which such total disability benefit is not payable.

NYLP002

## BENEFIT PROVISIONS *(continued)*

### Benefit 3. Waiver of Premium for Total Disability

The Company will waive the payment of each and every premium for this policy which falls due on and after whichever of the following occurs later:

(a) the ninety-first day of a continuous period of either accident or sickness total disability, or

(b) the income commencement date applicable under Benefit 1 for such disability,

and during the uninterrupted continuance of such total disability, whether or not the maximum benefit period for monthly income benefits expires before the waived premium falls due. Waiver of any premium under this Benefit 3 will continue the policy in force the same as if such premium had been paid. In event of the Insured's recovery from total disability, premiums falling due thereafter under this policy will be payable in accordance with its terms.

### Concurrent Disabilities

The Company's liability under this policy on account of any period during which the Insured is either totally disabled or partially disabled as the result of more than one injury, or more than one sickness, or both injury and sickness, shall be the same as if such disability were due to only one cause.

### Recurrent Disabilities

Where a period of either accident or sickness total disability for which a benefit was payable under Benefit 1 is subsequently followed by another period of such total disability, the second of these two periods of disability will be considered a new and separate period of disability if:

(a) the cause of the subsequent disability is entirely unrelated to the cause or causes of the earlier disability, or

(b) the Insured engages in a gainful occupation and performs all of the duties of such occupation on a full-time basis for a period of at least six months during the interval between the two periods of such disability.

Otherwise, the second of these two periods of disability will be considered a recurrence of the earlier disability and, although the monthly income for total disability will not be payable for the interval between the two periods of disability, the Company's liability under this policy, in all other respects, will be the same as if both periods of disability were one continuous period of total disability.

## EXCEPTIONS

This policy shall not cover any loss which is caused or contributed to by any one or more of the following:

(a) injury occurring, or sickness or disease contracted or beginning, while the policy is not in force;

(b) suicide or attempted suicide, whether the Insured is sane or insane;

(c) declared or undeclared war, or any act of war, including any armed aggression resisted by the armed forces of any country, combination of countries or international organization;

(d) injury occurring, or sickness or disease beginning, while the Insured is on full-time active duty as a member of the military, naval or air forces of any country, combination of countries or international organization, whether or not such country, combination of countries or organization is at war (if a premium was paid for any premium interval during which the Insured was on such full-time active duty, such pro-rata part of that premium as is applicable to the period of such full-time active duty will be refunded upon written request).

None of the following will be considered an "injury": hernia of any kind; any illness, disease or infirmity of mind or body; any bacterial infection other than a bacterial infection occurring in consequence of accidental injury on the exterior of the body; or any physical or mental condition which is caused or contributed to by any such hernia, illness, disease, infirmity or bacterial infection. Any of these which is contracted and begins while this policy is in force will, however, be considered a "sickness".

NYLP003

## GENERAL PROVISIONS

**1. Renewal Privilege**

This is a non-cancellable policy and, while it is maintained in force by the timely payment of premiums, it is guaranteed renewable to age 65, after which the policy shall no longer be in force. In connection with any such renewal, the Company cannot increase the premium, reduce the amount or duration of benefits, or place any restrictive rider on the policy.

**2. Effective Date of Policy**

This policy is deemed to have taken effect as of the policy date shown on its first page. Policy years, months and anniversaries will be determined from the policy date.

**3. Ownership of Policy**

All benefits, rights and privileges available under this policy during the Insured's lifetime are vested in the Owner.

**4. Dividends**

This is a participating contract and its share of divisible surplus will be determined annually by the Company. On each anniversary of this policy, any share of divisible surplus apportioned to it will become payable as a dividend if the policy is then in force and all premiums due have been paid to such anniversary.

The dividend, when payable, will be applied under one of the following options, as elected:

(a) *Cash* — Paid in cash.

(b) *Premiums* — Applied toward payment of a premium due if the balance of such premium is paid.

If no option is elected, option (b) will apply.

It is not expected that a dividend will be payable on this policy before its third anniversary.

**5. Payment of Premiums**

Premiums are payable during the Insured's lifetime in accordance with the Premium Schedule. Any date in the Premium Schedule which was based on the assumption that the Insured would be a specified age on such date shall be corrected, if necessary, to agree with the Insured's true age, nearest birthday.

After payment of the first premium, failure to pay a premium on or before its due date, to a duly authorized Office Manager of the Company or to the Company at its Home Office, will constitute default in payment of premium, and the insurance under this policy shall thereupon terminate except as provided in the Grace Period provisions of the policy.

Except where the age of the Insured has been misstated, if the Company accepts a premium for a period of coverage beginning on or after age 65, coverage under this policy will continue until the end of the period for which such premium was accepted.

*Premium Adjustment at Death.* If a premium was paid for the premium interval current at the time of the Insured's death, the Company will, upon receipt of due proof of such death, refund such pro-rata part of that premium as is applicable to the period, if any, between the end of the policy month in which death occurs and the end of such premium interval.

**6. Entire Contract; Changes**

This contract is made in consideration of the application for this policy, a copy of which is attached to and made a part of the policy, and the payment of premiums, in advance, in accordance with the terms and conditions of this contract. This policy, including the indorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy will be valid until approved by an executive officer of the Company and unless such approval is indorsed on the policy or attached to it. No agent has authority to change this policy or to waive any of its provisions.

**7. Incontestability**

(1) This policy shall be incontestable as to the statements contained in the application after it has been in force during the lifetime of the Insured for two years from the policy date except for any loss incurred or disability commencing before the expiration of such two year period.

(2) No claim for loss incurred or disability commencing after two years from the policy date shall be reduced or denied on the ground that a disease or physical condition had existed before the policy date unless, effective on the date of loss, such disease or physical condition was excluded from coverage by name or specific description.

**8. Grace Period**

A grace period of thirty-one days will be allowed for payment of a premium in default, during which period the insurance under this policy will continue in force. If such premium remains unpaid when the grace period ends, this policy will no longer be in force, but this shall not affect the right of the Owner or any other payee to any monthly income benefit or any accidental death or dismemberment benefit that may be payable under the policy on account of an injury which occurred, or sickness total disability which began, before the end of the grace period.

**9. Reinstatement**

If any renewal premium is not paid before expiration of the grace period for payment of such premium, a subsequent acceptance of premium by a duly authorized Office Manager of the Company or by the Company at its Home Office, without requiring in connection therewith an application for reinstatement, shall reinstate the policy. However, if the Company requires an application for reinstatement and issues a conditional receipt for the premium tendered, this policy will be reinstated upon approval of such application by the Company or, in the absence of such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the Owner in writing of its disapproval of such application.

The reinstated policy will cover only losses resulting from such injury as may occur, and from such sickness as may begin, after the date of reinstatement. In all other respects the Owner and Company shall have the same rights under this policy as they had under the policy immediately before the due date of the premium in default, subject to any provisions indorsed on this policy or attached to it in connection with the reinstatement.

6695-1

NYLP004

## GENERAL PROVISIONS (continued)

**10. Notice of Claim**

Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by this policy or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Owner or the beneficiary, if any, to the Company at its Home Office, 51 Madison Avenue, New York, New York, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

**11. Claim Forms**

The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**12. Proofs of Loss**

Written proof of loss must be furnished to the Company at its Home Office, in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss, not more than ninety days after termination of the period for which the Company is liable and, in case of claim for any other loss, within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time and if such proof is furnished as soon as reasonably possible and in any event, except in the absence of legal capacity, not later than one year from the time that proof is otherwise required.

**13. Time of Payment of Claims**

Benefits payable under this policy for any loss other than loss for which this policy provides any periodic payment, will be paid immediately upon receipt of due written proof of such loss. Subject to due written proof of loss, all accrued benefits for loss for which this policy provides periodic payment will be paid monthly during the continuance of the period for which the Company is liable, and any balance remaining unpaid upon the termination of liability will be paid at that time.

**14. Payment of Claims**

Any benefit payable under this policy on account of the Insured's death will be payable to the beneficiary. If there is no named beneficiary, any such death benefit will be payable to the Owner. Any other accrued benefits unpaid at the Insured's death may, at the option of the Company, be paid either to the beneficiary, if any, or to the Owner. All other benefits will be payable to the Owner.

If any benefit under this policy is payable to the estate of the Owner, or to a person who is a minor or otherwise not competent to give a valid release, the Company may pay such benefit, up to an amount not exceeding $1,000, to any relative of that person by blood or marriage who is deemed by the Company to be equitably entitled to it. Any payment made by the Company in good faith in accordance with this provision shall fully discharge the Company to the extent of such payment.

**15. Physical Examinations**

The Company at its own expense shall have the right and opportunity to examine the person of the Insured when and as often as it may reasonably require during the pendency of a claim under this policy.

**16. Legal Actions**

No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of the policy. No such action shall be brought after the expiration of three years from the time written proof of loss is required to be furnished.

**17. Misstatement of Age**

If the age of the Insured has been misstated, all amounts payable under this policy shall be such as the premium paid would have purchased at the correct age. However, if the Insured's correct age on the policy date is higher than the maximum age at which the Company would issue this policy, the Company's liability under the policy shall be limited to refund of the premium or premiums paid to the Company.

If the age of the Insured has been misstated and any premium is paid for coverage for a period beginning on or after correct age 65, the Company's liability with respect to such coverage shall be limited to refund of the premium or premiums paid to the Company for such period.

**18. Assignment**

A duplicate copy of any assignment of this policy, or of any interest in it, must be filed with the Company. Any assignment shall be subject to any payment made by the Company before such copy is received in the Department responsible for recording it at the Company's Home Office. The Company assumes no responsibility for the validity of any assignment.

The interest of any beneficiary under this policy shall be subordinate to the interest of any assignee and may be assigned by the Owner while the Insured is living. An assignee cannot change the beneficiary.

## INDORSEMENTS

NYLP006

**NOTE:** Copy of Application attached below should be carefully examined and if any error or omission is found, full particulars, with the number of the policy, should be sent immediately to the Home Office, at: 51 Madison Avenue, New York 10, N. Y.

# COPY OF APPLICATION

# NEW YORK LIFE INSURANCE COMPANY

**PROPOSED INSURED?** Print full name: Curtis Wylie Baker

**DATE OF BIRTH?** Mo. 2 Day: 5 Yr. 1938    **AGE nearest Birthday?** 28    **Male?** ☑ **Fem.?** ☐

Single? ☐ Married? ☐ Sep.? ☑ Div.? ☐ Wid.? ☐    Place of Birth? (State or Prov. and Country) Chilton County, Ala. U.S.A

**ADDRESS?**
Residence: Number 200 Ollie Ave  City or Town Clanton  County Chilton  State Ala.  Time at Address? Yrs: 3 Mos: 4    **FIRM OR EMPLOYER?** Dentist
Business: 501 1st Ave S.  Clanton  Chilton  Ala.  Yrs: 2 Mos: 4

Mailing Address? Res. ☐ Bus. ☐ Other ☑ P.O. Box 511 Clanton, Ala.

Is in Military Service, Pay Grade and Permanent Mailing Address? _____

Present Occupation(s)? Dentist    Duties of Occupation(s)? Practice of Dentistry

Previous Occupation(s) within last 2 years? Same    Previous Address(es) Residence: Same    within last 2 years? Business: Same

**LIFE PLAN and AMOUNT?**
O.P. Yes ☐ No ☐
C.P.O. Yes ☐ No ☐
C.P.B. Yes ☐ No ☐  A.D.B. $ ____  F. Inc. (___ Yr.) $ ____ Mo.
T.P.B. Yes ☐ No ☐  Term (___ Yr.) $ ____  M.P. (___ Yr.) $ ____ Units

APL? Yes ☐ No ☐
LIFE Dividend option? Cash ☐ Add'n ☐ Prem. ☑ Dep. ☐ Dep. & 1 Y.T. Opt. ☐

LIFE Policy to be dated?  Later date of Parts I and II ☐  Date policy written ☐  Other ____ 19__

**4. PREMIUM MODE?**  LIFE  HEALTH
C-O-M ☐ ☑
Nyl-a ☐ ☐
Mthly ☐ ☐
Qrtly ☐ ☐
Semi ☐ ☐
Ann'l ☐ ☐
Gov't ☐ ☐
S.P. ☐ ☐

**HEALTH PLAN and AMOUNT?**    Premier Income Protector 6695
Monthly Disability Income $ 700 ; Day Benefits Commence: Accident 31 Sickness 31
Daily Hospital Benefit $ ____ ; Deductible Amount $ ____
Maximum Major Medical Benefit $ ____ ; Deductible Amount $ ____

HEALTH Policy to be dated? Later date of Parts I and II ☑  Date policy written ☐  Other ____ 19__

**BENEFICIARY**, subject to change. Full Name & Relationship to Proposed Insured?
...

6. LIFE Policy Owner?  Proposed Insured ☐  Other ☐  (If "Other" complete question 15)

7. CASH PAID subject terms of receipt below (If none paid, say "none")
LIFE Policy $ ____ 4.3
HEALTH Policy $ 31

8. Has any person proposed for coverage (see Question 14):
- ever been declined for issue, reinstatement, or renewal of any type of Life or Health insurance, or been offered a policy on issue, reinstatement or renewal which was different from that applied for? Yes ☐ No ☑ (If "Yes", give name of person, companies and other details below.)
- flown within last 5 years, or intend to fly, as a pilot or other crew member of any kind of aircraft? Yes ☑ No ☐ (If "Yes", complete aviation blank, Form 5794, as part of this application.)
- resided within last 5 years, or intend to reside, outside the United States and Canada? (If "Yes", state where, when and how long.) Yes ☐ No ☑
- engaged in within last 5 years, or intend to engage in, skin diving, motor vehicle racing, sky diving, or any other hazardous sport or hobby? (If "Yes", complete Form 7663.) Yes ☐ No ☑

9. Is the policy(s) applied for intended to replace, in whole or in part, Life Health insurance in force in this or any other company? Yes ☑ No ☐ (If "Yes", give name of company, replacement date, amount of benefit placed, plan and policy number, if known.)
New York Life DE 998 782

10. Insurance in force or pending on Proposed Insured? (If none, say "none")
(a) If life policy being applied for, total amount of life insurance
In Force 100,000  Pending None
(b) If health policy being applied for, amount of health insurance
Mthly Inc. (Disability) | Daily Ben. (Hospital) | Max. Ben. (Maj. Med.) | In Force | Pending | Company or Organization

Amendments and Corrections (for completion at Home Office; this space will not be used where not allowed by Statute or Insurance Department Regulation)

NYLP008

**IT IS MUTUALLY AGREED THAT:**

1. Except as provided in a receipt, the terms of which are mutually acceptable, given for cash and bearing the same date and number as Part I of this application, no policy applied for herein shall go into force or take effect unless and until it is delivered to the Applicant and the first premium thereon is paid in full during the lifetime of the person or persons proposed for coverage under it, and then only if the written representations made in the entire application for insurance would be, without material change, at the time of delivery of the policy, true and complete representations of the facts, at that time, of those matters inquired about in such application.

Clanton, Ala. on April 27 1966
Witnessed by Alice B. Hayes Field Underwriter
Signed by _____ Licensed resident agent where required by statute or regulation.

Printed in U.S.A.

2. No field underwriter or other agent of the Company, nor any medical examiner, is authorized to accept risks, pass upon insurability, make or modify contracts, or waive any of the Company's rights or requirements.

3. The Applicant agrees that the written representations made in such application are correctly recorded, complete and true and that the Company, believing them to be true, shall rely and act upon them accordingly. Applicant confirms all agreements included in such application and agrees that acceptance of any policy issued thereon shall constitute ratification of such agreements and of any amendments and corrections which the Company has made under item 11 above.

Applicant X Curtis W Baker, D.M.D.
Proposed Insured* if other than Applicant _____
Proposed Insured's Spouse if proposed for life coverage _____
*"Name" instead of "Signature" if Proposed Insured is a child who cannot write

NEW YORK LIFE INSURANCE COMPANY
**ANSWERS TO THE MEDICAL EXAMINER** for HO Use
forming Part II of Application when used in connection with new insurance
For use where person examined is 14 years and 6 months of age or older.
(This examination should be made in private.)

998-782
601-154

S. 6 MOS. AND OVER

{Please Print}  Curtis Wiley Baker

Date of Birth? Mo: 2  Day: 5  Yr: 38
Present Occupation? Dentist

Please give the following information. If answer to any question is "Yes", please give full details in item 8.

| | Yes | No |
|---|---|---|
| you ever consulted a physician or practitioner for or, so far u know, ever had or been treated for | | |
| convulsions, dizziness, fainting spells, epilepsy, loss of consciousness, severe or frequent headaches, nervousness, mental illness or any other disorder of the brain or nervous system? | | ☒ |
| rheumatic fever, heart murmur, heart attack, angina pectoris, stroke, chest pain, shortness of breath, palpitation, irregular pulse, elevated blood pressure, varicose veins or any other disorder of the heart or blood vessels? | | ☒ |
| tuberculosis, persistent cough or hoarseness, pleurisy, blood spitting, asthma, hayfever, or any other disease of the lungs or respiratory system? | | ☒ |
| duodenal or gastric ulcer, nervous stomach, indigestion, appendicitis, colitis, diverticulitis, gall bladder disease, hemorrhoids, bleeding from the intestinal tract or any other disease of the stomach, liver, intestines or rectum? | | ☒ |
| nephritis, kidney stone or colic; sugar, albumin, blood or pus in urine; or any other disorder of the prostate, bladder, kidney or genito-urinary system? | | ☒ |
| any disorder of the breast or pelvic organs, or any other female disorder, including abnormal pregnancy? | | ☒ |
| any impairment or loss of sight, hearing or speech or any disorder of eyes, ears, nose or throat? | | ☒ |
| arthritis, rheumatism, gout, neuritis, sciatica or other disorder of or injury to, bones or joints, including back or spine? | | ☒ |
| paralysis, deformity, lameness or any other impairment of function, or loss of, hand, arm, shoulder, foot, leg or hip? | | ☒ |
| cancer, cyst, tumor, hernia of any kind; anemia or any other blood disorder; syphilis, diabetes, disease of the thyroid or any other gland; dermatitis, eczema or other skin disease? | | ☒ |
| alcoholism, or the excessive use of alcohol, or any drug habit? | | ☒ |

3. Have you

| | Yes | No |
|---|---|---|
| (a) ever had a surgical operation? | | ☒ |
| (b) ever been advised to have any surgical operation which has not been performed? | | ☒ |
| (c) within last 5 years, had any x-ray, electrocardiogram or other diagnostic procedure ordered by a physician or practitioner? | | ☒ |
| (d) within last 2 years, lived with anyone having tuberculosis? | | ☒ |
| (e) lost 10 or more pounds during past 12 months? (If "Yes", give amount, cause of weight loss and number of months at present weight in item 8.) | | ☒ |
| (f) been rejected, deferred or discharged by the armed forces because of a physical or mental condition? | | ☒ |
| (g) ever applied for, or ever received, benefits or a pension because of accident, sickness or disability? | | ☒ |

4. Other than as stated in your answers to the preceding questions, have you, within last 5 years, so far as you know,

| | Yes | No |
|---|---|---|
| (a) had any sickness, disease or injury? | | ☒ |
| (b) been admitted to, or advised to be admitted to, a hospital or sanitarium or other similar institution? | | ☒ |
| (c) consulted any physician or practitioner for any reason, including routine or checkup examination? | ☒ | |

5. To be answered only by married women:
Are you now pregnant?
(If "Yes", give month of pregnancy, number of previous pregnancies and complications of this or previous pregnancies in item 8.) | | |

6. Do you have any reason to believe you are not in good health at the present time? | | ☒ |

7. 
| Family Record? | Age if Living | Condition of Health. If not "Good", give details | Age at Death | Cause of Death |
|---|---|---|---|---|
| Father | 32 | Good | | |
| Mother | 49 | Good | | |
| Brothers | | None | | |
| Sisters | | None | | |

I HEREBY DECLARE that, to the best of my knowledge and belief, the information given in these "Answers to the Medical Examiner" is correctly recorded, complete and true and I agree that the Company, believing it to be true, shall rely and act upon it accordingly.

Dated at Wenton, Alabama on 8/1/1966

_____ M.D.
Medical Examiner

Signature of person examined  Curtis W Baker DMD

Med. Printed in U.S.A.     NYLP009

# ANSWERS TO THE MEDICAL EXAMINER (continued)

## forming Part II of Application when used in connection with new insurance

8. Please give full details for any questions answered "Yes" in these "Answers to the Medical Examiner".

| Question No. | Date(s) and Duration? | Name and address (please print) of each physician, hospital or company, if any; nature of illness or injury; number of attacks; severity; treatment; results; reasons and other pertinent information? |
|---|---|---|
| 4-c | 1965 | Physical For Pilots Rating. |

NYLP010

# NEW YORK LIFE INSURANCE COMPANY

REQUEST FOR TERMINATION OF POLICY NUMBER DE 998 782

If my application for insurance dated _April 27_ 19_66_, which accompanies this request, is approved by the New York Life Insurance Company and if the policy applied for therein is deemed to be in force in accordance with the mutual agreement contained in said application, I hereby request that:

(a) the above numbered policy be terminated on the day immediately preceding the date as of which the policy applied for in said application is deemed to be in force, and

(b) there be refunded to me such pro-rata part of any premium paid for the policy so terminated for the premium interval current on the date of such termination as was applicable to the period, if any, between the date of such termination and the end of such premium interval. Such premium interval will end one year after the due date of such premium if its mode of payment was annual, six months if semi-annual, three months if quarterly and one month if monthly.

In consideration of the Company's approval of this request, I hereby relinquish all my interest in and rights under the above numbered policy, effective on the day immediately preceding the date as of which the policy applied for in said application is deemed to be in force.

_April 27_ 19_66_

x_Curtis H Baker, DMD_
Signature of Insured

Witnessed by _Alice B. Hayes_

H-90   7-63   Printed in U.S.A.

NYLP011

**NEW YORK LIFE INSURANCE COMPANY** *A Mutual Company Founded in 1845* 51 MADISON AVENUE, NEW YORK, N.Y. 10010

PREMIER INCOME PROTECTOR POLICY
NON-CANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65

6695-1

NYLP012