

UNUMPROVIDENT.

*Your Coverage & Policy Benefits*



ULP0001

DEFENDANT'S
EXHIBIT
5

G-73702 (4-03)

Insured **CURTIS W BAKER**                    **02-04-1992**  Policy Date

Policy Number    **LAD169168**                **02-04-1992**  Effective Date

### DISABILITY INCOME POLICY
### NONCANCELLABLE TO AGE 65 AT GUARANTEED PREMIUM RATE
### THEREAFTER UNTIL AGE 75, RENEWABLE ON EACH POLICY ANNIVERSARY ON WHICH
### YOU ARE EMPLOYED AT LEAST 30 HOURS PER WEEK
### AFTER AGE 65, PREMIUM RATE IS BASED ON YOUR AGE ON EACH RENEWAL DATE

This policy provides disability income benefits under stated conditions.  Please refer to the policy provisions where we tell you when and how we will pay benefits.  You will find an index of these provisions on Page 2.

### TWENTY DAY RIGHT TO EXAMINE POLICY

Within 20 days after this policy is delivered to you or your representative, you may cancel the policy for any reason.  To cancel this policy, you or your representative must mail or deliver the policy to our Home Office or to one of our authorized representatives.  If this is done, the policy will be cancelled from the beginning and all of the premium paid will be refunded.

DUPLICATE

You may renew this policy on each policy anniversary until the policy anniversary when your age is 65 by paying each premium before its Grace Period ends.  Beginning with the policy anniversary when your age is 65, you may renew this policy until the policy anniversary when your age is 75 by paying the appropriate premium on each premium due date on which you are employed in a regular occupation at least 30 hours a week.

This policy becomes effective on the Effective Date shown on page 3.

Secretary                                        President

**UNUMPROVIDENT**

**UNUM Life Insurance Company of America**
A Stock Insurance Company
Home Office: 2211 Congress Street, Portland, Maine 04122
1-800-227-8138

ULP0002

Copyright 1986 UNUM Life Insurance Company of America

## Index of Policy Provisions

| | |
|---|---|
| 1 | **Twenty Day Right to Examine Policy** |
| 1 | **Renewal** |
| 3 | **Policy Schedule** |
| 4 | **Endorsements** (if any) |
| 5 | **Premiums** |
| 5 | **Reinstatement** |
| 6 | **Definitions** |
| 8 | **Benefits** |
| | Total Disability Benefit. |
| | Residual Disability Benefit. |
| | Recovery Benefit. |
| 9 | Benefit for Loss of Use. |
| | Death Benefits. |
| | Successive Disabilities. |
| | Waiver of Premium Benefit. |
| | Benefit Indexing Provision. |
| | Indexed Amount. |
| 10 | Transplant Donor Benefit. |
| | Rehabilitation. |
| 10 | **Exclusions and Limitations** |
| | Preexisting Condition Limitation. |
| 10 | **Claim Information** |
| | How to File a Claim. |
| | Conditions and Time Limits. |
| 11 | How and When We Pay Benefits. |
| 11 | **Change of Plan Provision** |
| 11 | **General Provisions** |
| | The Contract. |
| | Time Limit on Certain Defenses. |
| 12 | Conformity with State Statutes. |
| | Legal Actions. |
| | Misstatement of Age. |
| | Owner. |
| | Loss Payee. |
| | Assignment. |

Application and any riders follow page 12.

DUPLICATE

ULP0003

Page 3

## POLICY SCHEDULE

Insured    **CURTIS W BAKER**                          **02-04-1992**    Policy Date

                                                       **02-04-1992**    Effective Date

Policy Number    **LAD169168**

### Summary of Premium*

The premium mode at issue is **QUARTERLY**
Premiums are payable as follows

| Beginning | Annual | Semiannual | Quarterly | Special Monthly |
|---|---|---|---|---|
| 02-04-1992 | $2,486.70 | $1,268.22 | $646.54 | $211.38 |
| 02-04-1993 | $2,590.83 | $1,321.33 | $673.62 | $220.23 |
| 02-04-1999 | $1,977.43 | $1,008.49 | $514.13 | $168.09 |
| 02-04-2004 | COMPANY RATES THEN IN EFFECT | | | |

As long as the FlexBill group meets all FlexBill requirements or until this policy is removed from FlexBilling, premium is payable as follows in lieu of the premium specified above.

| Beginning | Annual | Semiannual | Quarterly | Special Monthly |
|---|---|---|---|---|
| 02-04-1992 | $2,113.69 | $1,081.72 | $547.07 | $185.76 |
| 02-04-1993 | $2,202.21 | $1,127.02 | $569.97 | $193.54 |
| 02-04-1999 | $1,680.82 | $869.19 | $435.03 | $147.72 |
| 02-04-2004 | COMPANY RATES THEN IN EFFECT | | | |

* Premium Guaranteed to age 65.

### Summary of Coverage - Group 01

Form-              **P90**              - OWNER PROFESSIONAL

Elimination Period-    **90  Days**

Maximum Benefit Period-TO THE LATER OF (A) AGE 65 POLICY ANNIVERSARY OR
                      (B) 24 MONTHS AFTER DISABILITY PAYMENTS BEGIN

| Description | Effective Date | Maximum Disability Benefit | Annual Premium | Premium Cease Date |
|---|---|---|---|---|
| **TOTAL SUMMARY** | | $2,080 | $1,802.70 | 02-04-2004 |
| | | THEN COMPANY | RATES THEN | IN EFFECT |
| Original | 02-04-1992 | $2,000 | $1,730.74 | |
| Automatic Increase | 02-04-1993 | $80 | $71.96 | |

| Rider Form | Description | Rider Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|---|---|
| NDI90 | Nondisabling Injury Benefit | 02-04-1992 | $2,500 | $15.00 | 02-04-2004 |
| | | | THEN COMPANY | RATES THEN | IN EFFECT |

ULP0004

LAD105168    02 of 02    07-21-2005

## Policy Schedule, Page 3, Continued

| Rider Form | Description | Rider Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|---|---|
| LA90 | Lifetime Monthly Accident Benefit For Total Disability Maximum Benefit Period- Lifetime | | | | |
| | **TOTAL SUMMARY** | | $2,080 | $159.73 | 02-04-2004 |
| | Original | 02-04-1992 | $2,000 | $153.12 | |
| | Automatic Increase | 02-04-1993 | $80 | $6.61 | |
| LS6090 | Lifetime Monthly Sickness Benefit For Total Disability Maximum Benefit Period- For sickness before age 60 Policy Anniversary - Lifetime | | | | |
| | **TOTAL SUMMARY** | | $2,080 | $613.40 | 02-04-1999 |
| | Original | 02-04-1999 | $2,000 | $587.84 | |
| | Automatic Increase | 02-04-1999 | $80 | $25.56 | |

Rider Premiums for the Premium Term are included in the Summary of Premium.

DUPLICATE

ULP0005

### UNUM LIFE INSURANCE COMPANY OF AMERICA

**ENDORSEMENTS**
**(Endorsements may be made only by the Company at its Home Office.)**



ULP0006

Page 4

## PREMIUMS

All premiums except the first premium are due on or before the due date. They are payable as stated on page 3.

Each premium will keep this policy in effect and continue coverage for the term shown.

As long as all premiums are paid before the end of their Grace Period, we will not increase the premium rate for this policy before the policy anniversary when your age is 65. On and after the policy anniversary when your age is 65, the premium is the rate then in effect for your age on each policy anniversary.

The Grace Period is the 31 consecutive days that begin with the day a premium is due. We will keep this policy in effect and continue coverage during that time. If the premium is not paid during those 31 days, this policy and all coverage under this policy will terminate.

If we accept premium after the policy anniversary when your age is 65, we will keep this policy in effect and continue coverage until the end of the period for which we accept it.

If any premium is paid beyond the month in which you die or this policy terminates for some other reason, we will refund the amount of the unearned premium paid.

Premiums must be paid in United States dollars.

## REINSTATEMENT

If this policy terminates because a premium is not paid by the end of the Grace Period, you may apply to reinstate this policy until the first unpaid premium is six months overdue.

In order to reinstate this policy, two requirements must be met. They are:

1. you must submit a reinstatement application with evidence of your insurability and the full amount of overdue premium; and

2. we must approve the reinstatement application.

A reinstatement application must be prepaid, and we will issue a prepayment agreement. The date of the prepayment agreement will be the date the reinstatement application has been completed.

If we approve the reinstatement application, this policy will be reinstated on the approval date. If the overdue premium is paid without submitting a reinstatement application and we keep the premium without requesting a reinstatement application within a reasonable time, this policy will be reinstated on the date we receive the premium. If we issue a prepayment agreement and do not approve or disapprove the reinstatement application within 45 days from the date of the prepayment agreement, this policy will be reinstated on that 45th day.

If this policy is reinstated, it will only cover:

1. injury that occurs on or after the date this policy is reinstated; or

2. sickness which is first diagnosed or is first treated more than 10 days after this policy is reinstated.

It WILL NOT cover:

1. any injury or sickness which is excluded by name or description; and

2. any preexisting condition excluded by the reinstatement application.

ULP0007

## DEFINITIONS

"Policy" means the contract of insurance between you and us. This form, all applications, and any riders, endorsements, or amendments that are attached to it make up the entire contract.

"Coverage" means a type or amount of benefit provided by this policy. Each benefit, each modification of that benefit for which we require evidence of insurability, and each reinstatement of that benefit is a separate coverage. For purposes of the Time Limit on Certain Defenses Provision, an increase provided by the Benefit Indexing provision is part of the coverage that was indexed unless evidence of insurability is required for that increase.

"You" and "Your" refer to the Insured named on page 3. It is the person whom we are insuring. The Insured can not be changed.

"We," "our" and "us" refer to UNUM Life Insurance Company of America.

"Injury" means bodily harm caused by an accident.

"Sickness" means a mental or physical illness or condition which has been diagnosed or treated.

"Maximum Disability Benefit" means the amount shown on page 3.

"Maximum Benefit Period" means the period shown on page 3.

"Preexisting condition" means an injury or sickness suffered by you which exists on the effective date of the coverage and, during the past five years, either:

1. was diagnosed;

2. caused you to receive medical advice or treatment; or

3. caused symptoms for which an ordinarily prudent person would have sought medical advice or treatment.

"CPI-U" means the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics or its successor. We may choose another nationally published index if the CPI-U is replaced or changed. If the new or revised index is proportionate to the CPI-U, we will use the new index. Otherwise, we will choose the index which, in our judgment, most closely reflects the change in the cost of living in the United States. If the change is subject to government approval, we will obtain it before we use the new or revised index.

"CPI-U Factor" means, during each year of disability, the ratio of the Current Index to the Base Index. A year of disability is from one anniversary of the beginning of disability to the next.

"Base Index" means the last CPI-U index published in the calendar year before disability begins.

"Current Index" means the last CPI-U index published in each calendar year after the disability begins.

"Regular occupation" means your occupation at the time the Elimination Period begins. If you engage primarily in a professionally recognized specialty at that time, your occupation is that specialty.

"To work full time in your regular occupation" means you work approximately the same number of hours in the same regular occupation as you were working before disability began.

"Disability" and "disabled" mean the period while you are satisfying the Elimination Period, or while the Total Disability Benefit, the Residual Disability Benefit, the Recovery Benefit or the Loss of Use Benefit is payable.

ULP0008

"Total disability" and "totally disabled" mean:

1. injury or sickness restricts your ability to perform the material and substantial duties of your regular occupation to an extent that prevents you from engaging in your regular occupation; and

2. you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness. We will waive this requirement when continued care would be of no benefit to you.

"Residual disability" and "residually disabled" during the Elimination Period mean:

1. injury or sickness does not prevent you from engaging in your regular occupation, BUT does restrict your ability to perform the material and substantial duties of your regular occupation:

    a. for as long a time as you customarily performed them before the injury or sickness; or

    b. as effectively as you customarily performed them before the injury or sickness; and

2. you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness. We will waive this requirement when continued care would be of no benefit to you.

After the Elimination Period has been satisfied, "Residual disability" and "residually disabled" then mean that as a result of the same injury or sickness which caused you to satisfy the Elimination Period:

1. you experience at least a 20% loss of net income in your regular occupation; and

2. you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness. We will waive this requirement when continued care would be of no benefit to you.

"Elimination Period" means the number of days stated on page 3 preceding the date benefits become payable (other than the Loss of Use Benefit), during which you are totally or residually disabled.

The Elimination Period begins on the first day that you are totally or residually disabled.

Different Elimination Periods may apply to different coverages under this policy. The Elimination Period for each coverage is described on page 3.

If the disability ceases before you satisfy the Elimination Period and you become disabled again from the same cause within 12 months, we will combine those periods of disability to determine when benefits begin.

"Gross revenue" means any income earned by you or your business for personal services performed by you in your regular occupation. It does not include dividends, interest, rent, royalties, annuities, sick pay or benefits received for disability under a formal wage or salary continuation plan, or other forms of unearned income.

Revenue may be accounted for on a cash basis or an accrual basis. The same method must be used to determine the Prior net income and current monthly Net income during a period of disability. If you elect the cash accounting method, income earned but not received before the Elimination Period began will be excluded from gross revenue during disability.

"Net income" means gross revenue minus your share of the usual and customary business expenses which you or your company incurs on a regular basis and are essential to your established business operation.

Expenses which are not usual and customary business expenses include salaries, drawing accounts, profits, benefits and other forms of remuneration which are payable to you or any member of your immediate family who was not a full-time paid employee of the business during the last 60 days before disability began.

DUPLICATE

ULP0009

ULP0010

"Prior net income" means the largest of: (1) your average monthly net income for the last 12 months before the Elimination Period began; (2) your average monthly net income for the 12-month period immediately before those 12 months; or (3) the highest average monthly net income for any two consecutive years of the last 5 years before the Elimination Period began. On each anniversary of the first day of a period of disability, we will calculate a CPI-U Factor. We will multiply the prior net income by that Factor. Then we will use that amount to calculate the Residual Disability Benefit or the Recovery Benefit.

"Loss of net income" means your indexed prior net income minus the net income you earned for the month to which the payment relates.

## BENEFITS

**Total Disability Benefit.** We will pay the Maximum Disability Benefit in any month after you have satisfied the Elimination Period that:

1. you are totally disabled; and

2. your total disability is a result of the injury or sickness which caused you to satisfy the Elimination Period.

The Total Disability Benefit will not be paid beyond the Maximum Benefit Period.

**Residual Disability Benefit.** After you have satisfied the Elimination Period, while you are residually disabled, the amount payable in any month will be determined by the following formula:

$$\frac{\text{loss of net income}}{\text{prior net income}} \times \text{Maximum Disability Benefit}$$

However, if your loss of net income is 75% or greater, we will pay the Maximum Disability Benefit for that month.

During the first six months that we pay the Residual Disability Benefit, we will pay the greater of:

1. one-half of the Maximum Disability Benefit; or

2. the amount determined under the formula above.

The Residual Disability Benefit will not be paid beyond the Maximum Benefit Period.

**Recovery Benefit.** We will pay a Recovery Benefit in any month after you have satisfied the Elimination Period that:

1. you are at work full time in your regular occupation; and

2. you are not entitled to the Total Disability Benefit, the Residual Disability Benefit or the Loss of Use Benefit, but presently experience at least a 20% loss of net income in your regular occupation as the direct result of the past injury or sickness which caused you to satisfy the Elimination Period.

The amount payable will be determined by the following formula:

$$\frac{\text{loss of net income}}{\text{prior net income}} \times \text{Maximum Disability Benefit}$$

However, if your loss of net income is 75% or greater, we will pay the Maximum Disability Benefit for that month.

The Recovery Benefit will not be paid beyond the Maximum Benefit Period.

DUPLICATE

**Benefit for Loss of Use.** Limited by the Maximum Benefit Period, we will pay the Maximum Disability Benefit monthly while an injury or sickness causes you the total loss of use of:

1. speech, hearing in both ears, or sight in both eyes; or

2. one hand and one foot; or

3. both hands; or

4. both feet.

We will pay this benefit from the date of loss. Your ability to work will not matter.

**Multiple Benefits.** Benefits payable in any month shall not exceed the Maximum Disability Benefit. For each period of disability, the Total Disability Benefit, the Residual Disability Benefit, the Recovery Benefit, and the Loss of Use Benefit combined shall not exceed the Maximum Benefit Period. In any month that the Loss of Use Benefit is paid, no Total Disability Benefit, Residual Disability Benefit or Recovery Benefit will be paid.

**Successive Disabilities.** A period of disability which follows a past period of disability will be considered a separate period of disability only if the subsequent period of disability is:

1. caused by a different injury or sickness than the one which caused the past period of disability; or

2. separated from the past period of disability by at least twelve months during which you are able to return to work full time in your regular occupation.

Any such separate period of disability will be considered a new disability; it will be subject to its own Elimination Period and Maximum Benefit Period and will be subject to all policy requirements. Any other subsequent period of disability will be considered an extension of the past period of disability.

**Waiver of Premium Benefit.** After the disability has lasted for ninety days while this policy is in effect, we will waive the premium as long as you are unable to return to work full time in your regular occupation as a result of the injury or sickness which causes the disability. We will refund premium already paid for that period on a pro rata basis.

**Benefit Indexing Provision.** On each annual review date until the policy anniversary when your age is 55, you will automatically have the opportunity to increase the Maximum Disability Benefit by the Indexed Amount provided that you are not then disabled and you have not refused the opportunity to increase your coverage in two consecutive years. Additionally, on each fifth annual review date, we have the right to determine based on evidence submitted that your total coverage then in effect does not exceed our issue and participation limits for the income which you are then earning. If you can not satisfy this condition, you still may increase the Maximum Disability Benefit on any subsequent review date until the policy anniversary when your age is 55, except during disability, if on that date the income which you are then earning qualifies you for the increase.

When the opportunity is made available, you may increase the Maximum Disability Benefit by paying the premium for the increased amount. The premium will be based on your age on that policy anniversary and the premium rate then in effect for this plan. The Maximum Benefit Period, Elimination Period and plan will be the same as for the coverage which is indexed.

**Indexed Amount.** The increase available each year will be the percent change in the CPI-U between October 31 in the previous calendar year and October 31 of the calendar year before that one or 8%, whichever is smaller, times the current Maximum Disability Benefit for the policy. If the change in the CPI-U is less than 4%, the increase available will be 4% of the current Maximum Disability Benefit.

ULP0011

ULP0012

**Transplant Donor Benefit.** Disability which results from the transplant of a part of your body to another person's body will be considered caused by a sickness.

**Rehabilitation.** While you are receiving disability benefits, you may request or we may suggest participation in a rehabilitation program designed to help you return to work. If we determine that such a program is appropriate, we will pay reasonable expenses for such items as tuition, books, training programs, or additional living expenses. The actual expenses covered and the terms of the plan will be subject to mutual agreement. Our agreement will be outlined in a written plan of rehabilitation. Benefits will continue as provided by this policy except if they are modified by the plan of rehabilitation.

## EXCLUSIONS AND LIMITATIONS

This policy does not pay benefits which are based on injury or sickness caused by:

1. war or an act of war, whether declared or undeclared.

2. normal pregnancy or childbirth, except we will pay benefits for loss caused by:

   a. complications of pregnancy; or

   b. normal pregnancy or childbirth after the later of the 90th day of disability or the completion of the Elimination Period.

No benefits will be payable for any period of disability in which you are incarcerated in a penal or correctional institution for a period of 30 consecutive days or longer.

**Preexisting Condition Limitation.** This policy does not pay benefits which are based on a preexisting condition if:

1. the preexisting condition is not disclosed or is misrepresented in the application; and

2. the preexisting condition causes a disability or other loss during the first two years after the effective date of the coverage.

Benefits will not be paid if they are based on disability that began before the effective date of the coverage.

## CLAIM INFORMATION

**How to File a Claim.** To make a claim under this policy, the following steps must be taken:

1. give Notice of Claim (someone must notify us that disability has started as defined in this policy);

2. file Proof of Loss (you, or someone acting on your behalf, and your attending physician must complete and return the claim form provided by us);

3. promptly complete and return any other forms we require; and

4. you undergo a medical examination by a specialist appropriate for the condition or a personal interview as often as we reasonably request while the claim is pending. We reserve the right to select the examiner. We will pay for the examination.

We will evaluate the claim and either:

1. pay the benefits specified in the policy; or

2. notify you and any Loss Payee that benefits are not payable and why. If we need more information, we will tell you and any Loss Payee what we need.

**Conditions and Time Limits.** In order for benefits to be payable, there are some conditions and time limits which each of us must meet. They are:

1. We must be given the Notice of Claim within 30 days after the Elimination Period begins, or as soon as reasonably possible.

2. We will furnish claim forms within 15 days after we receive written Notice of Claim. If the forms are not received within 15 days, send us proof of what happened and the extent of the sickness or injury.

3. The claim forms and other information requested by us (Proof of Loss) must be furnished to us within 90 days after each month for which a benefit is payable. However, failure to furnish such proof within 90 days will not reduce or nullify the claim if proof is furnished as soon as reasonably possible within one year after the 90 days. If you are legally unable to notify us, the one year limit does not apply.

4. We must be given the information which we need to determine if a benefit is payable and how much that benefit should be. We may require relevant portions of income tax returns for you or your business, income statements, vouchers for overhead expenses, and other statements or reports of receipts and payments. We may also require evidence that you were liable for an overhead expense before disability began.

**How and When We Pay Benefits.** We will pay benefits due under this policy in United States dollars. We will not pay any benefit until we have sufficient Proof of Loss. When we have determined that the claim is payable, we will pay according to the Benefits provision. If any amount is accrued and unpaid when our liability terminates, we will pay it immediately.

We will pay all benefits to the Loss Payee if living, otherwise we will pay you. If you die while you are entitled to receive benefits, we will pay any remaining benefit and any unearned premium to your estate.

## CHANGE OF PLAN PROVISION

This policy may be exchanged for any other disability income policy issued by us when the exchange is made, subject to underwriting guidelines then in effect, provided:

1. you are not disabled;

2. you are able to work full time in your regular occupation and are doing so; and

3. the request is made before the policy anniversary when your age is 55.

The Insured, amount, Maximum Benefit Period and Elimination Period will be the same as for this policy. Any rider attached to this policy when you exchange it may be continued on the new policy if it is available with that policy. The new policy will exclude any condition excluded by this policy.

The premium for the new policy will be based on your premium class and age on the effective dates of the coverages exchanged and your regular occupation on the date the exchange is effective.

If your request is approved, the new policy will be effective as of the date we receive the request to exchange policies.

## GENERAL PROVISIONS

**The Contract.** This policy represents the entire contract between you and us. Statements by agents or brokers are not part of our contract. Only an executive officer of this Company can approve a change in this policy. The approval must be in writing and be endorsed on or attached to this policy. No one else can change this policy or waive any of its conditions.

Unless we tell you something else, years, months and anniversaries that we refer to are calculated from the Policy Date shown on page 3.

**Time Limit on Certain Defenses.** Except for fraudulent misstatements, we will not contest those statements made by you in the application for a coverage provided under this policy after that coverage has been in effect for two years during your lifetime.

ULP0013

ULP0014

If disability begins after a coverage has been in effect during your lifetime for two years from the effective date of that coverage, we will not reduce or deny a claim which is based on that disability because of a preexisting condition unless the condition is excluded from coverage by name or description.

"Contest" means that we question the validity of coverage under this policy by letter to you. This contest is effective on the date we mail the letter and refund the premium to you.

**Conformity with State Statutes.** If any provision of this policy conflicts with the statutes of the state where you reside on the effective date of that provision, it is amended to conform with the minimum requirements of those statutes.

**Legal Actions.** No one may start legal action to recover on this policy until 60 days after Proof of Loss has been given to us. Legal action must be started within three years after the written Proof of Loss is required to be furnished.

**Misstatement of Age.** If your age has been misstated, any benefit payable will be changed to the amount which the premium paid would have bought for the correct age.

If we accept premium for a coverage which we would not have issued or which would have ceased according to the correct age, our only liability is to refund the premium for the period not covered.

**Owner.** You own this policy. You have all of the rights and privileges granted by this policy while it is in effect. Some of your ownership rights are:

1. the right to continue or terminate this policy;

2. the right to name someone else (a Loss Payee) to receive the benefits of this policy;

3. the right to suspend this policy while you are in military service; and

4. the right to assign any or all rights under this policy.

You may reduce the Maximum Disability Benefit at any time. Premium will be recomputed for the reduced amount based on your age and premium class on the effective dates of the coverages. The reduction will be effective on the date we receive your written request at our Home Office.

**Loss Payee.** If you decide to have someone else receive policy benefits, you must notify us in writing on a form satisfactory to us. The notice will be effective when we receive it at our Home Office.

**Assignment.** You may assign any or all ownership rights to someone else. The assignment must be in writing and must specify the rights which are assigned and for how long. The Loss Payee is not changed by an assignment unless the assignment specifically names a new Loss Payee. When an assignment is in effect, "you" and "your" refer to the assignee in provisions which describe ownership rights.

No assignment is binding on us until the original or an acceptable copy is received at our Home Office. We are not responsible for the validity or effect of any assignment.



**UNUM Life Insurance Company of America**
**A Stock Insurance Company**
**Portland, Maine 04122**

### NONDISABLING INJURY BENEFIT RIDER

This rider is part of the policy to which it is attached. The benefit provided by this rider is subject to the terms of this rider and the rest of this policy.

This rider becomes effective on the later of the Effective Date of the policy or the Rider Date shown on page 3 of the policy.

Premiums for this benefit are shown in the rider description on page 3 of the policy. They are payable at the same time and under the same conditions as premiums for the rest of this policy.

### DEFINITIONS

All terms used in this rider which are defined in the policy shall have the meaning given to them in the policy.

### NONDISABLING INJURY BENEFIT

If you are injured by an accident which occurs while this rider is in effect and before the policy anniversary when your age is 65, we will pay the total amount of any outpatient expense for medical care that you incur within 90 days of that accident if:

1. that expense was to treat injuries caused by that accident;

2. that accident does not cause disability; and

3. that outpatient expense plus all prior outpatient expenses incurred in connection with that same accident do not exceed the amount shown in the rider description on page 3.

If you are injured by an accident which occurs while this rider is in effect and on or after the policy anniversary when your age is 65, we will pay the total amount of any outpatient expense for medical care that you incur within 90 days of that accident if:

1. that expense was to treat injuries caused by that accident;

2. that accident does not cause disability; and

3. that outpatient expense plus all prior outpatient expenses incurred in connection with that same accident do not exceed one-half of the amount shown in the rider description on page 3.

### LIMITATIONS

If outpatient expenses otherwise covered by this rider also are payable in whole or in part by a State or Federal Workers' Compensation Law or Act, we will reduce the amount otherwise owed under this rider by the benefits payable by such Law or Act.

ULP0015

NDI90

**TERMINATION**

This rider terminates at the earliest of:

1. your request; or

2. the date the policy terminates.

Signed for us at our Home Office on the effective date of this rider.

Secretary

**DUPLICATE**

ULP0016

NDl90



UNUM Life Insurance Company of America
A Stock Insurance Company
Portland, Maine 04122

## LIFETIME ACCIDENT BENEFIT RIDER
### (Payable for injury which occurs before the policy anniversary when your age is 65)

This rider is part of the policy to which it is attached.  This benefit is subject to the terms and conditions of this rider and the rest of this policy.

This rider becomes effective on the later of the Effective Date of the policy or the Rider Date shown on Page 3 of the policy.

Premiums for this benefit are shown in the rider description on Page 3 of the policy.  They are payable until the policy anniversary when your age is 65 at the same time and under the same conditions as premiums for the policy.

### DEFINITIONS

All terms used in this rider which are defined in the policy shall have the meaning given to them in the policy.

DUPLICATE

On the later of the policy anniversary when your age is 65 or the end of the Maximum Benefit Period, the Total Disability Benefit is amended to read as follows:

> We will pay the Maximum Disability Benefit in any month after you have satisfied the Elimination Period that:
>
> 1.  you are totally disabled; and
>
> 2.  that total disability:
>
>     a.  is the result of injury which occurred before the policy anniversary when your age was 65 and while this rider was in effect; and
>
>     b.  began before the policy anniversary when your age was 65 and has been continuous until the month for which this benefit is payable.

The Maximum Benefit Period on page 3 does not limit payment of benefits under this rider.

ULP0017

**LA90**

**TERMINATION**

Coverage terminates on the policy anniversary when your age is 65. However, if you are totally disabled as a result of injury at that time, the Benefits provision of this rider will apply on that date or at the end of the Maximum Benefit Period if later.

Signed for us at our Home Office on the effective date of this rider.

Secretary

DUPLICATE

ULP0018

LA90



UNUM Life Insurance Company of America
A Stock Insurance Company
Portland, Maine 04122

## LIFETIME SICKNESS BENEFIT RIDER
### (Payable for sickness which begins before the policy anniversary when your age is 60)

This rider is part of the policy to which it is attached. This benefit is subject to the terms and conditions of this rider and the rest of this policy.

This rider becomes effective on the later of the Effective Date of the policy or the Rider Date shown on Page 3 of the policy.

Premiums for this benefit are shown in the rider description on page 3 of the policy. They are payable until the policy anniversary when your age is 60 at the same time and under the same conditions as premiums for the policy.

### DEFINITIONS

All terms used in this rider which are defined in the policy shall have the meaning given to them in the policy.

### BENEFITS

Beginning on the later of the policy anniversary when your age is 65 or the end of the Maximum Benefit Period, the Total Disability Benefit amended to read as follows:

DUPLICATE

We will pay the Maximum Disability Benefit in any month after you have satisfied the Elimination Period that:

1. you are totally disabled; and

2. that total disability:

a. is the result of sickness which began before the policy anniversary when your age was 60 and while this rider was in effect; and

b. began before the policy anniversary when your age was 60 and has been continuous until the month for which this benefit is payable.

The Maximum Benefit Period on page 3 does not limit payment of benefits under this rider.

### TERMINATION

Coverage terminates on the policy anniversary when your age is 60. However, if you are totally disabled as a result of sickness at that time, the

Benefits provision of this rider will apply beginning on the policy anniversary when your age is 65.

Signed for us at our Home Office on the effective date of this rider.

Secretary

ULP0019

LS6090



UNUM Life Insurance Company of America
A Stock Insurance Company
Portland, Maine 04122

## AMENDMENT OF APPLICATION

Proposed Insured      **CURTIS W BAKER**

Application Number    **D173359**

Application Date  **11-04-1991**

Policy Number    **LAD169168**

I (each of the undersigned) have carefully read this Amendment of Application and I understand and agree that:

1.    This Amendment will become a part of the identified Application(s) for the Policy referenced above;

2.    The Application(s) and the coverage applied for are changed as follows;
INSURANCE APPLICATION Q. 8B ADD LIFETIME ACCIDENT AND
LIFETIME SICKNESS 60;

INSURANCE APPLICATION Q. 20 ADD DETAILS TO Q. 18A
DR THOMAS WILLIAMS, 1988 REMOVED SCAR TISSUE, EVERYTHING
FINE;

3.    The coverage applied for in the Application(s) referenced above cannot become effectiv until the Company has approved the coverage in writing at its Home Office, and th Amendment is signed by the Proposed Insured and the Applicant, if other than the Pr posed Insured;

4.    Issuance of said coverage, as amended above, shall be consideration for the agreeme contained in this Amendment;

5.    The matters discussed in this Amendment are subject to all of the terms and conditior of the referenced Application(s) and the Policy;

6.    Once this Amendment is signed, it binds all persons claiming any interest under the Policy.

A duplicate copy of this Amendment has been attached to the Policy.

Signed at _Clanton, Ala_    on _March 31_ , 19 _92_

X _Mildred K. Daniel_                    X _Curtis W Baker_
_____              _____
Witness                                Signature of Proposed Insured

_____
662-85                                Signature of Applicant
                                      (If other than Proposed Insured)

ULP0020

0303F

 **UNUM.**

UNUM Life Insurance Company of America
A Stock Insurance Company
Portland, Maine 04122

## AMENDMENT OF APPLICATION

Proposed Insured    CURTIS H BAKER

Application Number    D173359    Application Date 11-04-1991

Policy Number    LAD169168

I (each of the undersigned) have carefully read this Amendment of Application and I understand and agree that:

1. This Amendment will become a part of the identified Application(s) for the Policy referenced above;

2. The Application(s) and the coverage applied for are changed as follows;
   INSURANCE APPLICATION Q. 20 ADD DETAILS TO Q. 18A
   DR THOMAS WILLIAMS, 1988 REMOVED SCAR TISSUE, EVERYTHING
   FINE;

3. The coverage applied for in the Application(s) referenced above cannot become effective until the Company has approved the coverage in writing at its Home Office, and this Amendment is signed by the Proposed Insured and the Applicant, if other than the Proposed Insured;

4. Issuance of said coverage, as amended above, shall be consideration for the agreement contained in this Amendment;

5. The matters discussed in this Amendment are subject to all of the terms and conditions of the referenced Application(s) and the Policy;

6. Once this Amendment is signed, it binds all persons claiming any interest under the Policy.

A duplicate copy of this Amendment has been attached to the Policy.

Signed at _Clanton, Ala_    on _3-19-92_ . 19

_James W. Large_
Witness

X_____
Signature of Proposed Insured

_____
Signature of Applicant
(If other than Proposed Insured)

662-85    _3-19-92_

_Benefits in this policy to be upgraded to
Lifetime Sickness & Lifetime Accident_

_James W. Large_
Witness

X_____
Insured

ULP0021

**UNUM** Life Insurance Company of America
Portland, Maine 04122

## APPLICATION FOR CUSTOMAX DISABILITY INSURANCE

NOTE: "YOU" and "YOUR" within this application refer to the Proposed Insured. PLEASE PRINT ALL ENTRIES.

**1** a) Your Full Legal Name (Last, First, Middle)   Baker, Curtis W. DMD    b) Social Security No.   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

c) ☒ Male  ☐ Female   d) Date of Birth  2 15 58   e) Current Age  53   f) Birthplace (State, Country)   g) Citizenship: ☒ US  ☐ Canadian  ☐ Other *
* if other, # of yrs. worked/resided in US ___ yrs

**2** a) Residence Address:
Street  Temple Rd    Apt. # ___
City  Clayton   State  Az   Zip  35045

b) Business Name and Address:
Employer Name  Curtis w. Baker DMD, PC
Street  101 Belk Ave   Ste. # ___
City  Clayton   State  A   Zip 35045

c) Mailing Address if other than residence or business:
Box No./Street  P.O. Drawer 2040   Apt. # ___
City  Clayton   State  Az   Zip  35045

**3** a) Occupation   Dentist
b) Nature of Business   Same
c) Length of time in years
___ yrs. in this occupation
___ yrs. with employer

d) Professional Designation or Degree
e) If Dentist or Physician, please provide specialty, if any:   Dentist

f) If owner please answer the following 3 questions:
1) ___ % of business owned
2) # of years business has been in existence ___
3) # of full-time employees ___

NOTE: Do not complete Q.#3g below if you are: an Accountant, Attorney, Controller, Dentist, Optometrist, Pharmacist, Physician, Podiatrist, or Psychologist (Ph.D.).

g) Are you:
☐ Owner
☐ Employee

Using a typical work week, please describe your occupational duties by indicating the approximate % of time devoted to the following duties:
___ % Sales   ___ % Travel   ___ % Managerial/Admin.   ___ % Physical/Manual
___ % Other  If Other, please provide details. ___

**4** a) Annual earned income from personal services (after business expenses, if any) as reported on your federal income tax return:
$ 100,000 †  CURRENT YEAR PROJECTED
$ 100,000 †  ACTUAL INCOME LAST YEAR
$ 100,000 †  ACTUAL INCOME TWO YEARS AGO

b) List your unearned income from investments and other sources (e.g., dividends, interest, net rental income, etc.):

| CURRENT YEAR (PROJECTED) | LAST YEAR | |
|---|---|---|
| $ less than | $ less than | Taxable & tax exempt dividends & interest |
| $ 10K | $ 10K | Rental income (Gross income less expenses, excluding depreciation) |
| $ | $ | Other (describe) |

c) Does your net worth exceed $4,000,000? ☒ No  ☐ Yes: If "yes", please complete supplemental financial questionnaire.

**5** a) List below all disability coverage in force and applied for in the last six months. Type should be shown as:
I - Individual, A - Association, G - Group (including employer sickpay), OE - Overhead, BS - BuySell, KP - Key Person.
If none, check here ☐ and go directly to #6.

| # | COMPANY NAME | TYPE | DATE ISSUED MO./YR. | MONTHLY BENEFIT AMOUNT | BENEFIT PERIOD | IN FORCE | APPLIED FOR |
|---|---|---|---|---|---|---|---|
| 1. | UNUM | I | | 2000 | 65 | ✓ | |
| 2. | UNUM | BUE | | 1000 | 24 | ✓ | |
| 3. | AOA | A | | 2000 | 5/2 | ✓ | |
| 4. | | | | | | | |

b) Are you covered by or eligible for a wage continuation program or group disability insurance not mentioned above?
☒ No  ☐ Yes If "yes" please give details. ___

c) Which of the coverages listed in 5 a/b will be changed or replaced by the coverages that you are applying for on this application?  If none, check here ☒ and go to question 6.

| # FROM 5a | DATE OF CHANGE/REPLACEMENT | DETAILS - GIVE POLICY NO. IF AVAILABLE AND INDICATE: C - CHANGE / R - REPLACE |
|---|---|---|
| | | |

**6** Have you ever applied for life, medical, or disability insurance which was declined, postponed, rescinded or modified in any way, or have you ever been refused renewal or reinstatement of insurance? ☒ No ☐ Yes: If "yes" please provide details. ___

ULP0022

1-89 ——————————————— i ———————————— **D 173359**

## INDIVIDUAL DISABILITY PLANS *(for Business Disability, see page 3)*

**7**

- ☒ Owner - Professional
- ☐ Owner - Professional With Dollar For Dollar Overhead Expense Rider*
- ☐ Owner - Manager
- ☐ Owner - Manager With Owner-Manager Overhead Expense Rider*
- ☐ AA
- ☐ Executive / Professional
- ☐ Executive / Professional With Dollar For Dollar Overhead Expense Rider*
- ☐ Total Disability
- ☐ Other

*** Also complete questions 11b-14**

**8**

**a) COVERAGE INFORMATION**

Monthly Benefit Amount $ 2000

| Benefit Period | Elimination Period | |
|---|---|---|
| ☒ 65/65 | ☐ 30 days | ☐ 180 days |
| ☐ 5/5 yr. | ☐ 60 days | ☐ 360 days |
| ☐ 2/2 yr. | ☒ 90 days | ☐ 720 days |
| | ☐ 120 days | ☐ Other |
| * ☐ Split 2yr./2yr. short T65/T65 long | * ☐ Split 60 days/780 days | |
| | * ☐ Split 90 days/810 days | |

*** IF SPLIT, PROVIDE PREMIUM PAYMENT DETAILS IN QUESTION 10.**

**b) OPTIONAL BENEFITS**

☐ COLA/GIF Simple ☐ COLA/GIF Compound

COLA ____% (4-12%) GIF____ % (0-8%)

☐ Retirement Recovery COLA *(ONLY IF RETIREMENT IS CHOSEN)*

☐ College

| Child's Name | Date of Birth | AMT |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

☐ Future Insurance Option ☐ FIO LTD $ ________

☐ Lifetime Accident

☐ Lifetime Sickness ☐ 55 ☐ 60 ☐ 65

☒ NDI - Nondisabling Injury *(ONLY ONE BENEFIT PER PROPOSED INSURED)*

☐ Occupational Rehabilitation

☐ Retirement

☐ Step Rate

☐ Other

**c) Loss Payee**

To Whom should benefits be paid?

☒ Insured ☐ Employer

☐ Other: Name ________

Street ________

City ________ State ____ Zip ________

**d) Additional Coverage with same/different EP/BP**

Monthly Benefit Amount $ ________

Elimination Period ________

Benefit Period ________

Optional Benefits (Please List)

1. ________ 2. ________ 3. ________ 4. ________

**9** **SPECIAL REQUESTS**

☐ Date to Save Age ☐ Add Coverage to Existing CUSTOMAX® Policy # ________

☐ Special Policy Date (Effective date will not be prior to this date) ________ ☐ Special Month for Indexing ________

☐ Other - (give details):

**10** **PAYMENT / BILLING**

a) Who will pay the premiums? *(check only one)*

Send Premium Notices To: *(check only one)*

| | Residence | Business *(from Q.#2)* | Other** |
|---|---|---|---|
| ☐ Proposed Insured directly at ________ | | | |
| ☐ Proposed Insured through payroll deduction at ________ | | | |
| ☒ Employer at ________ | | ✓ | |
| * ☐ Insured / Employer (split) at ________ | | | |

* If Split: ☐ By Percent - Employer will pay ______ %

☐ Traditional - Employer will pay ______ BP

☐ Other - Give complete details below:

**Other: Name ________

Street ________

City ________ State ______ Zip ________

b) *How Often?* ☐ 2 yr. Annual - 20% discount on 2nd yr. Premium ☐ Annually ☐ Semi-Annually ☒ Quarterly ☐ Monthly (FlexBill or A.P.P. only)

c) *Special Methods:* ☐ Add to existing FlexBill # ________ ☒ New FlexBill

apps to: [illegible]

☐ Automatic Payment Plan (complete A.P.P. authorization)

☐ Existing A.P.P. # ________

ULP0023

D 173359

# BUSINESS DISABILITY PLANS

**11**
a) ☐ Overhead Expense as a Sep___ e Policy: Dollar for Dollar
☐ Overhead Expense as a Separate Policy: Owner Manager
☐ Key Person: Complete Supplemental Application
☐ Buy Sell: Complete Supplemental Application

## COVERAGE INFORMATION

**TO BE COMPLETED FOR OVERHEAD EXPENSE POLICY OR OVERHEAD EXPENSE RIDER**

| b) Monthly Benefit Amount | Elimination Period | Benefit Period |
|---|---|---|
| $_____ | ☐30 ☐60 ☐90 | ☐6 mos.* ☐12 mos. ☐18 mos. ☐24 mos. |
| | | * Only available on Overhead Expense as a rider |

c) **OPTIONAL BENEFITS FOR OVERHEAD EXPENSE POLICY OR OVERHEAD EXPENSE RIDER**

☐ Partial Disability
☐ Future Insurance Option: $_____
☐ Other: _____

☐ Business Continuance: $_____
   Elimination Period: ☐30 ☐60 ☐90
   Benefit Period: ☐6 mos. ☐12 mos.*
   * Only available if the Benefit Period for Overhead
   Expense Coverage is 12 mos. or longer.

**2** Loss Payee (To Whom should benefits be paid):
☐ Proposed Insured
☐ Employer/Business/Practice

☐ Other: Name _____
Address _____
City _____ State _____ Zip _____

**3** List below the total monthly expenses of the business entity for which you are liable:

| | | | |
|---|---|---|---|
| Rent or Mortgage Payment | $_____ | Utilities | $_____ |
| Employee Salaries * | _____ | Maintenance | _____ |
| Employee Benefits * | _____ | Accounting/Legal Fees | _____ |
| Malpractice Insurance | _____ | Professional Dues | _____ |
| Property and Casualty Insurance | _____ | Subscriptions | _____ |
| Property Taxes | _____ | Postage/Stationery | _____ |
| Equipment Payments | _____ | Other Miscellaneous | _____ |
| Auto Lease Payments | _____ | **TOTAL MONTHLY EXPENSES** | $_____ |

*Do not include salaries, drawing accounts, profits, benefits and other forms of remuneration which are payable to you or to anyone employed in your business who performs the same regular occupation as you do.

**4** SPECIAL REQUESTS
☐ Date to Save Age   ☐ Special Month for Indexing _____   ☐ Other (give details):
☐ Add Coverage to Existing CUSTOMAX Policy # _____

**NOTE:** Complete the following section only if you are applying for Overhead Expense as a Separate Policy. If billing information will be the same as any Individual Disability Policy requested on page 2, check here ☐ and proceed to page 4.

**5** PREMIUM PAYMENT / BILLING
a) *Who will pay the premiums?*
   *(check only one)*

Send Premium Notices To:
*(check only one)*

| | Residence | Business (from O.#2) | Other * |
|---|---|---|---|
| ☐ Proposed Insured directly at | | | |
| ☐ Proposed Insured through payroll deduction at | | | |
| ☐ Employer at | | | |

* Other Name _____
Street _____
City _____ State _____ Zip _____

| b) How Often? | ☐2 yr. Annual - 20% discount on 2nd yr. Premium | ☐Annually | ☐Semi-Annually | ☐Quarterly | ☐Monthly (FlexBill or A.P.P. only) |
|---|---|---|---|---|---|

| c) Special Methods: | ☐Add to existing FlexBill # _____ | ☐Automatic Payment Plan (complete A.P.P. authorization) |
|---|---|---|
| | ☐New FlexBill | ☐Existing A.P.P.# _____ |

3

**D 173359**

ULP0024

## MEDICAL

**16**
a) During the last 30 days, have you worked in your regular occupation (stated in question 3) less than your usual number of hours per week because of sickness or injury?  YES ☐* NO ☒

b) In the past 12 months, have you had any indication of, been told you had, or been treated for cancer, a stroke, any heart disease or disorder, or any psychological or emotional disorder?  YES ☐* NO ☒

**\* IF EITHER 16a OR 16b ARE ANSWERED "YES," PREPAYMENT CANNOT BE ACCEPTED.**

c) Have you smoked any cigarettes in the past 12 months?  YES ☐ NO ☒

d) Height: 6 ft. 2 in.  Weight: 210 lbs.
Weight change last year: 2~ ☐Gain ☐Loss
Reason for change: _____

e) Name and Address of Personal Physician: (If none, please so indicate)
D. Phillp Fiske
Date last seen: 7/8? Reason: flight physical

**DO NOT COMPLETE QUESTIONS 17-20 IF YOU ARE PROVIDING A UNUM MEDICAL EXAM.**

**17** Have you ever had, been told you had, or been treated for:

a) rheumatic fever, angina, chest pain or pressure, palpitation, heart murmur, heart attack or any other disease or disorder of the heart, or circulatory system?  YES ☐ NO ☒

b) high blood pressure, anemia, phlebitis, varicose veins or any other disease or disorder of the blood or blood vessels?  YES ☐ NO ☒

c) allergy, asthma, bronchitis, emphysema, pleurisy, tuberculosis or any other disorder of the lungs or bronchial tubes?  YES ☐ NO ☒

d) colitis, hernia, ulcer, cirrhosis; any disease or disorder of the mouth, esophagus, digestive system, intestines, rectum, liver, pancreas, or gall bladder?  YES ☐ NO ☒

e) blood, sugar, pus or albumin in your urine?  YES ☐ NO ☒

f) kidney stones, or any disorder of either kidney, the prostate, urinary or reproductive tract, or any sexually transmitted disease?  YES ☐ NO ☒

g) polyp, tumor, cancer, or a disease or disorder of the immune system except AIDS or ARC?  YES ☐ NO ☒

h) diabetes or any glandular or thyroid disorder?  YES ☐ NO ☒

i) epilepsy, convulsions, dizziness, fainting, paralysis or any other disease or disorder of the brain or nervous system?  YES ☐ NO ☒

j) mental illness, anxiety, depression or any psychological or emotional condition or disorder?  YES ☐ NO ☒

k) pain in the back or neck, sciatica, slipped or herniated disc, or any other disorder of the neck, back or spine?  YES ☐ NO ☒

l) arthritis, gout or any disease or disorder of the muscles, bone, joints, or skin?  YES ☐ NO ☒

m) any amputation or deformity, partial or total loss of vision or impaired hearing, or disease or disorder of the eyes or ears?  YES ☐ NO ☒

**18** Other than already mentioned in this application, have you in the past five years:

a) consulted a physician, psychiatrist, psychologist, counselor, chiropractor or other practitioner (include regular checkups)?  YES ☒ NO ☐

b) had or been advised to have any surgical operation, hospitalization, medical care, electrocardiogram, x-ray, blood test or other diagnostic test?  YES ☐ NO ☒

c) used cocaine, amphetamines, hallucinogens, barbiturates, heroin or any other narcotic drug?  YES ☐ NO ☒

**19**
a) Has a parent, brother or sister ever had diabetes or heart disease, cancer or hereditary disease?  YES ☐ NO ☒

b) Are you now taking medication (prescription or non-prescription) for any reason?  YES ☐ NO ☒

c) Are you now experiencing any symptoms, disease, disorder or condition which might require surgery, impair your health or your ability to work, now or in the future, for which you plan to consult a physician?  YES ☐ NO ☒

d) Have you ever had or been told to have counseling or treatment for, or been arrested in connection with, the use of alcohol or drugs?  YES ☐ NO ☒

**20** Give details by Question Number for any "Yes" answers to above questions (including question 16).

| QUES. # | NAME AND ADDRESS OF PHYSICIAN AND/OR HOSPITAL | DATE | REASON | TREATMENT/ ADVICE | RESULT/ DIAGNOSIS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

ULP0025

— 4 —

D 173359

**D 173359**

## BROKER INFORMATION

**21** a) For commission purposes, ple    list below broker's name(s) or broker's    t business entity name(s). If more than one broker, specify split percentage.

Indicate below to whom all correspondence is to be sent:

1. _Jim Large_ _____ _W_ % ☑
2. _____ _____ % ☐
3. _____ _____ % ☐
4. _____ _____ % ☐

b) How long have you known the Proposed Insured? _2 months_ | c) Occupational Class _4SA_

**22** Is this a replacement policy? ☑No ☐Yes : If "Yes", have you complied with all regulations regarding replacement policies for your state? ☐No ☐Yes _NA_

**23** Complete the following if requesting an Alternate Policy:

Name of Plan if Alternate to Personal Disability: _____

Disability Benefit Amount: $ _____
Elimination Period _____
Benefit Period _____
Optional Benefits: _____
_____

Name of Plan if Alternate to Overhead Expense: _____

Overhead Expense Benefit Amount: $ _____
Elimination Period _____
Benefit Period _____
Optional Benefits: _____
_____

---

### IF MONEY IS RECEIVED WITH THE APPLICATION THE FOLLOWING SECTION MUST BE COMPLETED

1. I acknowledge that I have been given a Conditional Receipt for prepayment bearing the same number as this application. I have read it and I understand and agree to its provisions.

2. ☐ If the policy(s) for which I have rendered prepayment is issued with an extra premium charge or with coverage exclusion(s), I request that the effective date and the policy date of such policy(s) be seven days from the issue date, and not as determined by the provisions of the prepayment agreement.

_____ _____
Date                    Signature of Proposed Insured

---

*Do not detach unless payment is made at time of application*

## CONDITIONAL RECEIPT/PREPAYMENT AGREEMENT

Received $_____ From _____ on_____ 19____

Thank you for your premium prepayment.

Premium prepayment alone does not guarantee that you are insured. However in exchange for payment of 1/6 of the annual premium for the policy you requested, UNUM Life Insurance Company of America agrees to determine if you are insurable according to our standard underwriting practices. If you qualify for coverage, the effective date of this coverage will be as follows unless you have checked statement 2 on page 6 of the application:

- the prepayment check is received in the Home Office on the same day as the application, the effective date of coverage will be the latest date of the application or any required exam, test, questionnaire or other supplemental application.
- the prepayment check is received in the Home Office after the application but before the approval date, the effective date of coverage will be the latest date of any required exam, test, questionnaire, supplemental application or the date the check is received in the Home Office.
- you request a change in coverage after the application is signed, the effective date of that coverage will be seven days after the issue date.
- any policy requested is not issued, or is declined, cancelled or returned within 20 days of receipt by you or your agent, or you withdraw the request, prepayment will be refunded to the prepayment payor.

This agreement applies to each policy you have prepaid with your application, and may not be altered in any way by anyone.

ULP0026

_____ _____
§        Broker (acknowledging receipt of prepayment) **D 173359**

## AGREEMENT

I (each of the undersigned) have carefu' read this application and I understand a gree that:

1. All of the statements made in this application must be and are true, complete and correctly recorded to the best of my knowledge and belief. The Company will rely on the information provided in this application and any supplemental applications, to determine whether to provide the requested coverage. These completed documents shall form a part of my contract of insurance and any coverage based on such information is contestable in accordance with the provisions of the policy providing such coverage.

2. No agent, broker, medical examiner or anyone other than a Home Office underwriter may waive questions asked or answers given in this application or the medical exam; determine if I am eligible for a policy; make or promise that I will be issued a policy of insurance; or change or waive any rights or requirements of the Company.

3. If I stated in response to question 5a/b on page 1 of this application that I would permanently change or replace existing insurance and I have not done so when a disability begins, any benefits payable by the Company as a result of this Application will be reduced by the amount of existing coverage which I said I would terminate and my premium will be adjusted to reflect the actual benefits received.

4. If I prepaid premium with this application, insurance will become effective only as provided by the terms of the Prepayment Agreement.

5. If I did not prepay premium with this application, insurance will be effective if a policy has been delivered to me and I have paid the first premium, provided that, on the later of the delivery date or payment date, the answers in this application and in any supplemental application, medical exam or other questionnaire are then still true and complete.

6. Payment of all premium is my responsibility as owner of the policy. If my employer, broker, or any other person collects, pays or forwards any part of the premium for this policy, they act as my agent and not as agent for the Company. If the Company does not receive premium as due, the policy will lapse.

7. If a policy is issued, the effective date will be the date coverage begins, the policy date will be the date premium shall be payable from, the approval date will be the date a Home Office underwriter approves issuance of a policy, and the issue date will be the date a policy is generated in the Home Office.

8. Changes made by the Company on this application and listed under "Corrections and Amendments" will be considered ratified by me if I accept the policy that is issued unless the changes are prohibited in the state in which that policy is issued.

### CORRECTIONS and AMENDMENTS (Home Office Use Only)

Signed at ___Clanton, Al___ on __11/4__ . 19 _91_    Signature of Proposed Insured

LAD169168

Broker _____    Signature of Applicant if other than Proposed Insured

### DISCLOSURE AUTHORIZATION

I authorize any of the following who have information about me, my health, my finances, or claim history to disclose that information to UNUM Life Insurance Company of America and its employees, reinsurers, insurance support organizations, Equifax, Inc., and other authorized representatives:  1) any physician, hospital, clinic, or other medical professional or medical facility;  2) the Medical Information Bureau, Inc.;  3) any employers or financial institutions;  4) other insurance companies; 5) any person or organization which has information as outlined in the following paragraph.

Information which may be disclosed includes information about my financial condition, physical or mental condition, driving record, use or treatment for use of drugs or alcohol; hobbies, avocations and sports or hazardous activities in which I participate.

I understand this information will be used to underwrite my application for insurance and may be used to evaluate a claim for benefits during the time this authorization is valid.

I agree that this authorization will be valid for two and one-half years from the date I sign it.    1231

For the purpose of verifying information on this application, my telephone number is ___ 755. ___    and I may be reached at that number: (specific time/days) __9-5__

If an investigative consumer report is prepared, please interview me: [✗] Yes    [ ] No

I have read this authorization and understand that I may receive a copy and that a photocopy of this shall be as valid as the original. I have also read and received a copy of the Notice of Information Practices.

Witness _____    Signature of Proposed Insured _____    Date __11/4/9.__

ULP0027