# Unum Life Insurance Company of America
HOME OFFICE - PORTLAND, MAINE

INSURED
POLICY NUMBER
POLICY DATE
PREMIUM TERM
INITIAL PREMIUM

**DISABILITY INCOME POLICY**

## INSURING PROVISION

In consideration of the application herefor, a copy of which is attached hereto and made a part hereof, and the payment in advance of the premium specified in the Schedule, Unum Life Insurance Company of America does hereby insure the above-named Insured, subject to all the provisions, exceptions and reductions contained herein, attached hereto or endorsed hereon, against disability and loss, as indicated in the Schedule, resulting from:

(a) Sickness or disease of the Insured which first manifests itself while this policy is in force, hereafter called "sickness," or

(b) Accidental bodily injury occurring while this policy is in force, hereafter called "injury."

Coverage hereunder shall begin on the Policy Date.

## NOTICE OF TEN DAY RIGHT TO EXAMINE POLICY

Within ten days after its delivery to the Insured, this policy may be surrendered by delivering or mailing it to the Home Office at Portland, Maine, or to any branch office or to the agent through whom it was purchased. Upon such surrender, the Company will return any premium paid and the policy shall be deemed void from the Policy Date.

The provisions written or printed by the Company on the following pages hereof are a part of this policy.

**In Witness Whereof,** the Unum Life Insurance Company of America has caused this policy to be signed by its President and Secretary and countersigned by a Licensed Resident Agent on the Policy Date.

_Kevin J. Tierney_ — Secretary            _____ — President

Examined by ................................ Countersigned by ................................
                                              *Licenced Resident Agent*

**NONCANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65
QUALIFIED RIGHT OF RENEWAL THEREAFTER TO AGE 72.**

IH 3-70


DEFENDANT'S EXHIBIT

1048-71 (4/03)
ULP2001

## RENEWAL PROVISION

**Renewal Provision.** The first premium under this policy in the amount shown in the Schedule is payable on the Policy Date and will continue the policy for the term specified, subject to the grace period provided herein. The policy may be continued thereafter for like terms by the periodic payment of renewal premiums as specified in the Policy Schedule until the age 65 anniversary when the coverage hereunder shall terminate with respect to any disability incurred thereafter except as otherwise provided by the "Policy Continuance After 65" provision.

Until the age 65 anniversary, the only condition for the renewal of this policy is the timely payment of premiums as herein required. While this policy is maintained in force, and before the age 65 anniversary, the Company cannot cancel the policy, increase the premiums in the Policy Schedule, reduce benefits because of change to a more hazardous occupation or place any restrictive rider hereon.

**Policy Continuance After Age 65.** The Insured has the right, by the timely payment of required premiums, to continue this policy beyond the age 65 anniversary, for as long as he is regularly and gainfully employed on a full-time basis, but not beyond the age 72 anniversary. If the Company accepts a premium which covers any period of one year or less beginning on or after the age 72 anniversary, coverage under this policy will continue until the end of such period.

The Maximum Benefit Period for Total Disability commencing after the age 65 anniversary is twenty-four months. Premiums payable on and after the age 65 anniversary will be based on the Company's table of rates then in effect for the Insured's attained age. The Company's table of rates may be changed at any time, but the change shall apply only to premiums due after the effective date of the change, and no change will be made in the premium for this policy which does not also apply to all other persons of the same attained age and rating classification covered under policies of this form.

During such continuance, the Company may at any time require proof that the Insured continues to be regularly and gainfully employed on a full-time basis. If the Insured ceases to be so employed (except by reason of Total Disability), this policy will terminate as of the date of cessation of employment, except that coverage will continue to the end of any period of one year or less for which premium has been paid. The termination of this policy will be without prejudice to (1) any loss resulting from sickness and commencing prior to the effective date of such termination, or (2) any loss commencing within 20 days following such effective date and resulting from injury occurring on or before such date.

## DEFINITIONS

Wherever used in this policy:

"Total Disability" means the inability of the Insured to perform the duties of his regular occupation, except that if benefits are payable beyond the age 65 anniversary for continuous disability, and this policy provides benefits in excess thereof, then for the remainder of any period of his disability after such anniversary, "Total Disability" shall mean complete inability of the Insured to engage in any gainful occupation for which he is reasonably fitted in consideration of his training, education, experience and/or prior average earnings. However, the total loss by the Insured of the use of both hands, both feet, or one hand and one foot, or the total loss of speech, hearing of both ears, or sight of both eyes shall be deemed to constitute "Total Disability" so long as such total loss of use, speech, hearing or sight shall continue, irrespective of whether the Insured engages in his or any other gainful occupation; and

"Elimination Period" means the number of days at the beginning of the period of Total Disability, commencing with the first day thereof, for which no benefits are payable;

"age 65 anniversary" means the policy anniversary on or next following the Insured's sixty-fifth birthday;

"age 72 anniversary" means the policy anniversary on or next following the Insured's seventy-second birthday.

## BENEFIT PROVISIONS

**Total Disability Benefits – Sickness.** If, as the result of sickness, the Insured suffers continuous Total Disability commencing while this policy is in force, and at the same time requiring the attendance of a licensed physician other than himself, the Company will pay periodically at the rate

IH 3-70                              Page 2

ULP 2001.5

05/24/2005

POLICY SCHEDULE

|  |  |
|---|---|
| INSURED | CURTIS W BAKER DMD |
| POLICY NUMBER | LA N550174 |
| POLICY DATE | SEPTEMBER 20, 1976 |
| PREMIUM TERM | ANNUALLY |

RENEWAL PREMIUMS*      $    437.01 PAYABLE ANNUALLY UNTIL 09-20-2013.


MONTHLY BENEFIT- FOR TOTAL DISABILITY $ 2,000.00

ACCIDENT ELIMINATION PERIOD-   90 DAYS. SICKNESS ELIMINATION PERIOD-   90 DAYS.

MAXIMUM BENEFIT PERIOD- TO THE LATER OF A. OR B.
               A. AGE 65 POLICY ANNIVERSARY.
               B. 24 MONTHS AFTER DISABILITY PAYMENTS COMMENCE.

BENEFICIARY- AS DESIGNATED IN THE APPLICATION FOR THIS POLICY UNLESS SUBSE-
QUENTLY CHANGED IN ACCORDANCE WITH THE POLICY PROVISIONS. (APPLICABLE ONLY
IF PRINCIPAL SUM PROVIDED HEREIN.)


UNTIL THE INSURED'S NAME IS REMOVED FROM THE LIST BILL, PREMIUM IS PAYABLE AS
FOLLOWS IN LIEU OF THE PREMIUM SPECIFIED ABOVE.

          $    378.18 PAYABLE QUARTERLY UNTIL 09-20-2013.

[DUPLICATE stamp overlaid on page]

CIH3-70                     PAGE 3

ULP2002

LA    N550174    1                                              05/24/2005

                    UNUM LIFE INSURANCE COMPANY OF AMERICA

                                ENDORSEMENTS

        (ENDORSEMENTS MAY BE MADE ONLY BY THE COMPANY AT ITS HOME OFFICE)


THE RENEWAL AFTER AGE 65 PROVISION OF POLICY FORM IH3-70 IS
CHANGED AS FOLLOWS:


    AGE 72 IS CHANGED TO AGE 75.


THE FOLLOWING PROVISION IS ADDED TO POLICY FORM IH3-70:


    TRANSPLANT DONOR BENEFIT. TOTAL DISABILITY WHICH RESULTS FROM
    THE TRANSPLANT OF A PART OF YOUR BODY TO ANOTHER PERSON'S BODY
    WILL BE CONSIDERED A SICKNESS. HOWEVER, SUCH TOTAL DISABILITY
    WILL NOT BE COVERED IF IT BEGINS BEFORE THE POLICY HAS BEEN
    IN FORCE FOR SIX MONTHS.

SIGNED FOR THE COMPANY AT ITS HOME OFFICE.


        BY


625-82                                      SECRETARY
                PAGE 3A

**BENEFIT PROVISIONS — Continued**

of the Monthly Benefit for Total Disability specified in the Policy Schedule, provided however, that no benefit will be payable for the Sickness Elimination Period, nor for any period of disability in excess of the Maximum Benefit Period as specified in said Policy Schedule.

**Total Disability Benefits — Accident.** If, as the result of injury, the Insured suffers continuous Total Disability commencing while this policy is in force, and at the same time requiring the attendance of a licensed physician other than himself, the Company will pay periodically at the rate of the Monthly Benefit for Total Disability specified in the Policy Schedule, provided however, that no benefit will be payable for the Accident Elimination Period, nor for any period of disability in excess of the Maximum Benefit Period as specified in said Policy Schedule.

**Consecutive Disabilities.** Consecutive periods of total disability will be considered as separate periods of total disability, each subject to its own elimination period and maximum benefit period, provided that each such period is due to different causes or that each is separated by at least six months during which the Insured is continuously working on a full-time basis.

**Rehabilitation.** If the Insured is receiving Monthly Benefits for Total Disability, the Company, upon written request from the Insured, will consider a rehabilitation program for the Insured. The extent of the Company's participation in the program shall be determined by mutual agreement between the Insured and the Company giving consideration to such items as additional living costs, tuition and books. Monthly Benefits shall continue to the Insured during his rehabilitation subject to the terms of the agreement.

**Waiver of Premium for Disability Commencing Prior to Age 65.** After any Total Disability that commences prior to the age 65 anniversary has continued for ninety consecutive days, the Company will refund any premiums due and paid during the continuance of such Total Disability and will waive all premiums coming due during such Total Disability. Following such a period of disability during which the Company has waived premiums, the insurance provided in this contract shall continue in full force and effect until the next premium due date, at which time the Insured shall have the right to resume payment of premiums as they become due.

**EXCEPTIONS**

This policy does not cover any loss caused by war or any act of war, whether declared or undeclared.

Under no circumstances will the Insured be considered to be suffering from more than one total disability at the same time.

**GENERAL PROVISIONS**

**Entire Contract: Changes.** This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

**Incontestable.** (a) After this policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the application; and (b) No claim for loss incurred or disability (as defined in this policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from the coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

**Grace Period until Age 65 Policy Anniversary.** A grace period of thirty-one days will be granted for the payment of each premium falling due after the first premium until payment of the premium covering the period ending with the age 65 anniversary, during which grace period this policy shall continue in force.

**Grace Period after Age 65 Policy Anniversary.** Unless, not less than five days prior to the premium due date, the insurer has delivered to the Insured or has mailed to his last address as shown by the records of the Company written notice of its intention not to renew this policy beyond the period for which the premium has been accepted, a grace period of thirty-one days will be granted for the payment of each premium falling due on or after the age 65 anniversary, during which grace period this policy shall continue in force.

**Reinstatement.** If any renewal premium be not paid within the time granted the Insured for payment, a subsequent acceptance of premium by the Company or by any agent duly authorized by the Company to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate this policy; provided, however, that if the Company or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, this policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the Insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date. After sixty days following the age 65 anniversary, any premium accepted in connection with a reinstatement and applied to a period for which premium has not been previously paid, shall not be

IH 3-70    Page 5    1225-70

ULP2004

### GENERAL PROVISIONS — Continued

applied to any period more than sixty days prior to the date of reinstatement. In all other respects, the Insured and the Company shall have the same rights thereunder as they had under this policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement.

**Notice of Claim.** Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Insured or the beneficiary (if designated in this policy) to the Company at its Home Office in Portland, Maine, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

**Claim Forms.** The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in this policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proofs of Loss.** Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Company is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

**Time of Payment of Claims.** Benefits payable under this policy for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon receipt of due written proof of such loss. Subject to due written proof of loss, all accrued benefits for loss for which this policy provides periodic payment will be paid monthly and any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof.

**Payment of Claims.** The benefit for loss of life (if provided by this policy) will be payable in accordance with the beneficiary designation and the provisions respecting such payment which may be prescribed herein and effective at the time of payment. If no such designation or provision is then effective, such benefit shall be payable to the estate of the Insured. Any other accrued benefits unpaid at the Insured's death may, at the option of the Company, be paid either to such beneficiary or to such estate. All other benefits will be payable to the Insured.

If any benefit of this policy shall be payable to the estate of the Insured, or to an Insured or beneficiary (if designated in this policy) who is a minor or otherwise not competent to give a valid release, the Company may pay such benefit, up to an amount not exceeding $1,000, to any relative by blood or connection by marriage of the Insured or beneficiary who is deemed by the Company to be equitably entitled thereto. Any payment made by the Company in good faith pursuant to this provision shall fully discharge the Company to the extent of such payment.

**Physical Examinations.** The Company at its own expense shall have the right and opportunity to examine the person of the Insured when and as often as it may reasonably require during the pendency of a claim hereunder.

**Legal Actions.** No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Change of Beneficiary.** The right to change beneficiary (if designated in this policy) is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy.

**Misstatement of Age.** If the age of the Insured has been misstated, all amounts payable under this policy shall be such as the premium paid would have purchased at the correct age.

If, because of misstatement of the Insured's age, the Company shall accept any premium which falls due on a date when, according to the correct age, this policy, including endorsements or attachments hereto, would not have been issued or coverage would have ceased, then the liability of the Company shall be limited to the refund, upon request, of all premiums paid for the period not covered.

**Payment of Premiums.** All premiums are payable in advance, subject to the terms of the grace period provided herein, at the Home Office of the Company in Portland, Maine, or to any authorized agent of the Company. Premiums may be paid annually, semi-annually or quarterly in advance in accordance with the Company's premium rates in force on the effective date of this policy, as elected in the application herefor and, except in any period during which the Insured is totally disabled, the mode of premium payment may be changed on any anniversary of the effective date of this policy upon request approved in writing by the Company at its Home Office. The payment of any premium

## GENERAL PROVISIONS — Continued

shall not continue this policy in force beyond the date when the next premium is due and payable, except as may be otherwise provided by said grace period.

**Military Service Provision.** If the Insured becomes a member of the armed forces of any country or military authority, or a member of any civilian noncombatant unit serving such forces, he may elect to continue or suspend this policy. Upon receipt of written notice by the Company that the Insured has elected to suspend this policy, the Company will refund that portion of the premium which would have provided coverage for the period following the date such notice was received by the Company.

If, within five years from the date on which this policy was so suspended, the Insured terminates his full-time active duty, the policy will be reinstated without evidence of insurability, on receipt by the Company of (a) written election of reinstatement and (b) payment of the pro-rata unearned premium covering the period from the termination of such active duty to the next premium due date.

If the Insured does not terminate his full-time active duty within five years from the date on which this policy was suspended, or if he does not reinstate this policy within 90 days following termination of his full-time active duty, he may reinstate this policy then only in accordance with the Reinstatement provision.

**Conformity with State Statutes.** Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the Insured resides on such date, is hereby amended to conform to the minimum requirements of such statutes.

**Premium Refund at Death.** In the event of the death of the Insured while this policy is in force, the Company will refund, on a pro-rata basis, any unearned premium paid by the Insured. Such refund may, at the option of the Company, be paid to the beneficiary or to the estate of the Insured or to any other person to whom benefits may be payable and under the same conditions of such payment.

**Assignment.** No assignment of interest under this policy shall be binding upon the Company unless and until the original or a duplicate thereof is filed with the Company at its Home Office. The Company will assume no responsibility for the validity or sufficiency of any assignment.

**Owner.** The Owner of this policy shall be the Insured unless other person(s) are designated as Owner in the application for this policy or designated as provided below. The Owner may change the designation of Owner by written notice during the lifetime of the Insured received at the Home Office of the Company in such form as the Company may require accompanied by this Policy. While more than one person is Owner, all persons acting as owner shall act jointly unless such designation so endorsed or accepted by the Company provides otherwise.

The Owner during the lifetime of the Insured may exercise all rights and privileges under this policy without the consent of any person (including any contingent Owner) unless required by law or unless the designation of Owner provides otherwise, EXCEPT that (1) such power shall be subject to the rights of any assignee or other persons then of record, and (2) in processing the particulars of any claim, the Company before paying any benefit may deal with either the Insured or the Owner alone or require both to participate where necessary.



**UNUMPROVIDENT.**

Unum Life Insurance Company of America
Portland, Maine 04122

## LIFETIME MONTHLY BENEFIT FOR ACCIDENT TOTAL DISABILITY RIDER

This rider extends the monthly benefit period for total disability. This benefit is subject to the terms of this rider and this policy.

Premiums for this benefit are shown in the rider description on page 3 of this policy. They are payable at the same time as premiums for this policy.

### LIFETIME MONTHLY BENEFIT FOR ACCIDENT

**Benefit Amount.** We will pay the Lifetime Monthly Benefit for Accident Total Disability shown on page 3 if:

(1) the total disability is caused by injury;
(2) the Monthly Benefit for Total Disability is payable under this policy;
(3) the total disability begins before the policy anniversary when your age is 65; and
(4) the total disability continues beyond the Maximum Benefit Period.

**Benefit Period.** We will begin to pay this benefit at the end of the Maximum Benefit Period in the policy.

We will stop paying this benefit on the date when total disability, as defined in the policy, ends.

### TERMINATION

Premiums for this rider are payable to the policy anniversary when your age is 65. Coverage terminates at that time except for total disability which began before that date.

### EFFECTIVE DATE

The effective date of this rider is the Policy Date. If this rider is added at a later date, the effective date will be the Rider Date shown on page 3.

Signed for us at our Home Office on the effective date.

Secretary                                    President

CIHR 8-70M

1003-79 (5/04)

ULP2007



Unum Life Insurance Company of America
HOME OFFICE — PORTLAND, MAINE

## RESIDUAL DISABILITY BENEFIT RIDER
(prior total disability not required)

This rider provides a benefit for residual disability as defined below. The benefit is subject to the terms of this rider and the policy.

Premiums for this rider are shown in the rider description on page 3 of this policy. They are payable at the same time as premiums for the policy.

### DEFINITIONS

Whenever used in this rider:

(1) "Residual disability" means that you are not totally disabled but, as a result of sickness or accident, you have a loss of net earned income of at least 20%, you are under the care of a physician other than yourself, and:

 (a) you are unable to do one or more of the material and substantial duties of your occupation; or

 (b) you are unable to do the material and substantial duties of your occupation for as long as they usually require.

Nothing in this definition limits or changes the definition of total disability in the policy.

(2) "Residual Monthly Benefit" means:

(A ÷ B) x C where:

A = Loss of Net Earned Income (from definition (5) below),

B = Average Net Earned Income (from definition (4) below), and

C = the Monthly Benefit for Total Disability shown on page 3 of the policy.

However:

 (a) during the first six months of residual disability payments, the Residual Monthly Benefit is one-half of the Monthly Benefit for Total Disability if that is more than the formula provides; and

 (b) if the Loss of Net Earned Income for any month is more than 75% of your Average Net Earned Income, the Residual Monthly Benefit for that month is the Monthly Benefit for Total Disability.

(3) "Net Earned Income" means payments received by you for personal services while doing your occupation and adjusted for expenses. You must deduct your usual and customary business expenses except income taxes. It does not include interest, dividends, rents, royalties, annuities, pensions, deferred compensation, wage continuation payments, and other forms of unearned income.

(4) "Average Net Earned Income" means the greater of:

 (a) one-twelfth of your Net Earned Income for the last twelve months before disability began, or

 (b) your highest average monthly Net Earned Income for any two consecutive years of the last three years before disability began.

On each anniversary of the first day of a period of disability, we will calculate a CPI-U Factor. We will multiply the Average Net Earned Income calculated above by that Factor. Then, we will use that amount to calculate the Loss of Net Earned Income (definition (5)).

(5) "Loss of Net Earned Income" means Average Net Earned Income minus Net Earned Income during disability.

(6) "CPI-U" means the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics or its successor. We may choose another nationally published index if the CPI-U is replaced or changed. If the new or revised index is proportionate to the CPI-U, we will use the new index. Otherwise, we will choose the index which, in our judgment, most closely reflects the change in the cost of living of the United States. If the change is subject to government approval, we will obtain it before we use the new or revised index.

(7) "Index Month" is the third full month before the date on which disability began. "Factor Month" is the same calendar month as the Index Month in each successive year of disability.

"CPI-U Factor" means the ratio of the CPI-U for the Factor month to the CPI-U for the Index Month

$$\frac{\text{CPI-U for Factor Month}}{\text{CPI-U for Index Month}}$$

If you become disabled again within one year after a period of total or residual disability, the CPI-U Factor will be calculated as if disability had been continuous.

The policy definition of "elimination period" is hereby replaced by:

DR23-83                                    ULP2008              1086-83 (5/04)

"Elimination Period" means the number of days of disability you must wait before you are entitled to total or residual disability benefits. Either total disability or residual disability, or a combination of them will satisfy the elimination period for either benefit. Elimination periods are shown on page three.

### RESIDUAL MONTHLY BENEFIT

We will pay the Residual Monthly Benefit determined under Definition (2) above for each month that you are residually disabled after the elimination period.

Except as limited below, we will pay the Residual Monthly Benefit until:

(1) you are no longer residually disabled; or

(2) the combined periods for which you have been paid total and residual monthly benefits equal the period shown on page 3 for which the Monthly Benefit for Total Disability is payable; or

(3) the age 65 policy anniversary. (However, we will continue benefits after this date if necessary to complete 24 payments for total and residual disability combined.)

**Return to Full-Time Work Benefit.** Following a period of compensable total or residual disability, we will pay up to 3 months continued benefits if, as a result of the same sickness or injury, you have a loss of net earned income of at least 20% during those months. The amount will be calculated as provided in Definition (2) above. We will pay no more than 3 months benefit for all successive periods of disability arising from the same sickness or injury.

**Limitation.** We will not pay the residual monthly benefit for any month for which you receive a monthly benefit for total disability or loss of use.

**Evidence of Earned Income.** We may require any evidence which we consider necessary to determine your Net Earned Income before and during residual disability. From time to time, we may require audits, for which we will pay, to verify such evidence and the amounts paid or payable.

**Successive Disabilities.** This provision supplements the "Successive Disabilities" provision on page 6 of the policy.

A period of residual disability will not be subject to a new elimination period or a new benefit period if:

(1) it starts less than six months after the end of a period of total disability or a previous period of residual disability; and

(2) it results from the same cause or causes.

All other periods of residual disability are subject to a new elimination period and a new benefit period.

### WAIVER OF PREMIUM BENEFIT

This provision replaces the one on page 6 of the policy:

> **Waiver of Premium Benefit.** If you become disabled before the policy anniversary when your age is 65, we will waive premiums that are due after total disability, residual disability, or a combination of them has continued for ninety days. We will also refund any premium due and paid during those ninety days.
>
> We will continue to waive premiums for as long as you are totally disabled, residually disabled, or receiving the Loss of Use Benefit.
>
> Following a period when we have waived premiums, this policy will remain in force until the next premium due date. Beginning with that date, you may continue this policy in force by paying premiums as they are due.

### TERMINATION

Except as provided in item (3) of the Residual Monthly Benefit provision, the coverage under and the premium for this rider will cease on the policy anniversary when your age is 65.

### EFFECTIVE DATE

The effective date of this rider is the later of:

(1) the Effective Date of the policy; or
(2) the Rider date shown on page 3 for this rider if any.

Signed for us at our Home Office on the effective date of this rider.

_signature_  
Secretary

_signature_  
President

ULP2009



UNUM Life Insurance Company of America
Portland, Maine 04122-2150

## Change in Definition of "Total Disability"

This rider is a part of the policy to which it is attached.

The definition of "Total Disability" is hereby deleted and the following substituted therefor.

"Total Disability" means the inability of the Insured to perform the duties of his regular occupation. However, the total loss by the Insured of the use of both hands, both feet, or one hand and one foot, or the total loss of speech, hearing of both ears, or sight of both eyes shall be deemed to constitute "Total Disability" so long as such total loss of use, speech, hearing, or sight shall continue, irrespective of whether the Insured engages in his or any other gainful occupation.

This rider is subject to all the provisions, conditions and exclusions of the policy as well as any riders, amendments or agreements which are a part thereof.

IN WITNESS WHEREOF, the Company has caused this rider to be executed effective on the policy date.

Secretary

CIHR 57-70                                                                                                                                ULP2010

481-73 (8/93)

PART 2

**Unionmutual**

1. Proposed Insured (Print last name, first name, mid. init.)
   Curtis W. Baker, D.M.D.

2. Address (Street & No., RFD, City, County, State and Zip Code)   Send Notices To:
   a. Home  Rt. 1 Box 60-H Clanton
   b. Business  101 Baker Ave. Clanton, AL

6. Occupation (include specific duties)   Name of Employer and Address (if different from above)
   Dentist (G.P.)    Self

7. Owner, if other than Proposed Insured    State of Incorp. or Partnership    Address
   Same

8. HAVE YOU:                                                                                    YES  NO
   a. Ever received or claimed benefits or a pension for sickness, injury or impairment?         ☐   ☒
   b. An application for life or health insurance now pending in another company?                ☐   ☒
   c. Flown or do you expect to fly as a pilot or crew member of any aircraft?                   ☒   ☐
   d. Any intention of traveling or residing outside the U.S. or Canada?                         ☐   ☒
   e. Any expectation of military service within 6 months?                                       ☐   ☒
   f. Engaged in underwater diving, below forty feet, parachuting, motor vehicle racing, or do you intend to do so?   ☐   ☒

9. Insurance in force on Proposed Insured (if none, write "none")

| Company | Year Issued | Life | Accidental Death | Monthly Income | Sickness |
|---|---|---|---|---|---|
| Mu. N.Y. | 1962 | 100,000 | | | |
| Amer Life | 1968 | 50,000 | | | |
| Farm Bureau | 1965 | 50,000 | | | |
| Nat'l Life | 1960 | 25,000 | | | |
| N. York Life | | | 1,000 | | |

**COMPLETE ITEMS 10-15 AND 21, IF NECESSARY, WHEN APPLYING FOR LIFE INSURANCE**

10. Plan _____ Amt. _____

Optional Benefits:
☐ Waiver of Premium, if eligible
☐ Accidental Death Benefit $ _____
☐
☐
☐

12. Amt. Paid for Life Ins. with Appl. $ _____

13. Automatic Premium Loan Privilege will be effective if this box is checked ☐

14. Beneficiary(ies) With Right of Change (Give names and relationship(s))
    Primary:


    Contingent:


Amt. of Ins. (incl. any benefits checked above) Purchasable by
$ _____ Prem. based on mode checked in item 11

15. Will any insurance be discontinued or changed in this or any other Company?

16. Premiums Payable   Ann ☐  S.A. ☐  Quar. ☐  Mo. ☐  PAC ☐  Sal Ded ☐  Gov Allot ☐

ULP2011

| | | |
|---|---|---|
| Maximum Benefit Period | | |
| Sickness: _____ Accident: _____ | | |
| Elimination Period | | |
| Sickness: ___ Accident: ___ | | |
| Other: | | |

17. Premiums Payable: ☐ Ann  ☐ S.A.  ☒ Quar  ☐ PAC  ☐ Sal Ded

18. Amount paid for Health Insurance with this Application $ _____

19. Will any Health Insurance be discontinued if this policy is issued?  ☐ Yes  ☐ No  If yes give:
    Company _____  Amount _____  Date of Termination _____
    (N.Y. Life   1000 mo)

20. Beneficiary(ies) Give full name(s) and relationship
    (for Acc. Death Benefit only)

21. SPECIAL REQUESTS (use with Life or Health Ins.)

22. FOR HOME OFFICE USE ONLY

IT IS UNDERSTOOD AND AGREED by the undersigned Proposed Insured and Applicant that: (1) The statements and answers made herein together with those in each Part II or Part III hereof are, to the best of my/our knowledge and belief, true and correctly recorded, and are offered to induce the Company to issue the policy(ies) applied for; (2) No agent, broker, medical examiner or employee except an authorized Company employee at its Home Office has authority to determine insurability or to make, modify, or discharge any contract of insurance, or to waive any requirement of the Company; (3) Except as provided under the Conditional Receipt numbered identically herewith (if such Receipt has been given to Applicant), no insurance applied for hereunder shall become effective unless the policy shall have been issued by the Company and the first premium paid in full thereon, and then only if the statements and answers referred to in item (1) above would represent, without material change, to the best of my/our knowledge and belief, true and complete answers to the same questions on such payment date. (4) If such Receipt has been given to Applicant, EACH AND EVERY CONDITION OF THE RECEIPT MUST BE MET BEFORE ANY INSURANCE BECOMES EFFECTIVE. (5) No contract entered into or changes made by the Company shall be effective unless agreed to in writing by the Applicant. (6) The Applicant under any policy issued hereon shall be the Proposed Insured, unless another person or firm shall execute this application below. (7) Under any insurance policy issued hereon providing for ownership, the Proposed Insured shall be the Owner unless otherwise provided.

Signed at _Clanton, AL_  Date Signed _7-26-76_ 19___

Witness _____  Signature of Soliciting Agent _____  Signature of Proposed Insured _____

General Agent or Manager _____  Applicant's Name (if other than Proposed Insured) _____

N° 126459  ATLANTA

ULP2012

**SECTION 1**

1. What is her source of income? _____
2. Who will pay premiums? _____
3. If married give husband's name _____
4. His occupation _____ Annual Income $ _____
5. _____
6. _____
7. Maiden name and name of former _____

**SECTION 2** — Complete if Application is for Business Insurance

1. Is the Applicant a: ☐ Corporation ☐ Partnership ☐ Individual
2. If Applicant is a Partnership, list names of all partners _____
3. Insurance now in force on Proposed Insured in favor of Applicant $ _____
4. Explain the Applicant's insurable interest in the proposed insured _____
5. Has similar insurance been purchased or applied for on other officers or partners? Give details. _____

**SECTION 3** — Complete for All Cases

1. Previous addresses of Proposed Insured during last 2 years (5 yrs. if $20,000 or more)
   Residence _____ none _____ From ___ To ___
   Business _____ none _____ From ___ To ___

2. Other occupations of Proposed Insured during last 5 years and how long in each ___ no ___

3. How well and how long have you known Proposed Insured? ___ 2 yrs ___

4. If beneficiary is not a close relative, employee or business associate, explain the insurable interest _____

5. What is your estimate of Proposed Insured's financial worth? Net Worth $ D.K.   Earned Income $ _____   Other Income $ _____

6. Occupational classification for Health Ins. ___ AAA ___   7. Do you unqualifiedly recommend approval of this Application? ___

8. Is this a replacement life policy? ___ no ___   Have State regulations regarding a replacement proposal been met? ☐ Yes ☐ No

9. Applicant's Educational Level: ☐ Grammar ☐ High School ☐ College ☒ Post Graduate

10. Age of Spouse ___ 27 ___. Age(s) and Sex of Children ___ 1 Son 10 ___ 1 Daughter 8 ___

11. If this application is prepaid, check payment method: ☐ Cash ☐ Check ☐ Money Order ☐ Other _____ (specify)

12. Remarks _____

---

**CONDITIONAL RECEIPT — INDIVIDUAL LIFE OR HEALTH**

Amount(s) Received: $ _____ for proposed life insurance   $ _____ for proposed health insurance

NO INSURANCE WILL BECOME EFFECTIVE UNLESS EACH AND EVERY CONDITION AND REQUIREMENT OF THIS AND THE REVERSE SIDE OF THIS CONDITIONAL RECEIPT IS FULFILLED EXACTLY. NO AGENT, BROKER, MEDICAL EXAMINER OR EMPLOYEE OF THE COMPANY EXCEPT A COMPANY OFFICER AT ITS HOME OFFICE IS AUTHORIZED TO ALTER OR WAIVE ANY PROVISION OF THIS CONDITIONAL RECEIPT. **NOTICE** — This Receipt is not _____ with respect to any payment received as temporary term insurance premium, or (b) if payment made toward the first policy premium is less than 1/12 of the annual premium or less than $7.50.

Received from _____ the sum of $ _____
to be applied toward the first premium(s) as proposed above and on a Part I Insurance application numbered identically herewith. This Receipt shall not be valid if any check, draft, or money order given for it is not honored.

Dated at _____   Issued by: The _____ Office of the
this ___ day of _____ 19__   Unionmutual Stock Life Insurance Co. of America
                                By _____ Title _____

This Receipt shall be void if altered in any way. Only an Agent, Broker, Office Supervisor or Manager of the Office identified above is authorized to sign this Receipt.

**№ 126459**            **CONDITIONS OF THIS RECEIPT**

**Limit of Liability.** The Company shall not be liable for any amount of insurance which, together with any insurance (including accidental death benefits but excluding group insurance) now pending issuance by the Company on the life of the Proposed Insured, is in excess of $100,000. Any amount in excess of such limit may become effective only under the provisions of Part I of the application or the Conditions of this Receipt on the reverse side hereof.

**Suicide.** In the event of suicide of the Insured between the date of the Part I application and the Date of the policy issued, the amount payable by the Company shall be limited to returning all sums paid under said Part I application.

ULP2013

[Top portion of form heavily degraded/illegible]

Name: Gene Raburn Ins Agency
by E.O. Raburn
Date: 7/26 19 76

I have personally reviewed the statements made by Proposed Insured and Applicant and those given by the agent and am satisfied that this application has been properly completed.
Date: Aug 10, 19 76    ATLANTA

## MARKETING INFORMATION

**I.**
A. If application is for both, which was Primary Sale? ☐ Life  ☐ Disability Income
B. Is policy Split Dollar? ☐ Yes ☐ No — Minimum Deposit? ☐ Yes ☐ No
C. If security involved in sale, please specify ☐ Mutual Fund ☐ Variable Annuity ☐ Other

**II. Source of Applicant:**
☐ A. Approached me
☐ B. Cold Canvass
☐ C. Referral
☐ D. Personal Acquaintance
☐ E. Direct Mail Replier
☐ F. Direct Mail Non-Replier
☒ G. Salary Savings Case
☐ H. Orphan Policyowner
☐ J. Securities Customer
☐ K. Discovered While Servicing
☐ 1. Group Case
☐ 2. Pension Case
☐ L. Other _____

**III. Type of Sales Track Used:**
☐ A. Single Need (Direct Policy Sale)
☐ B. Ideal Property [Track]
  ☐ 1. Hill of Life
  ☐ 2. Insured Savings
  ☐ 3. Ledger Statement
  ☐ 4. Other (Specify)
☐ C. Joint Securities — Ins. Sale
☐ D. Planning Service
  ☐ 1. One Interview Ins. Program
  ☐ 2. Two Interview Ins. Program
  ☐ 3. Computerized Ins. Prog. (I.P.S.)
  ☐ 4. Ins. & Finan. Planning (P.I.P.)
  ☐ 5. Estate Planning (Cap. Co-ord.)
  ☐ 6. Computerized Estate Planning
☐ 7. Dis. Income Program
☐ 8. Computerized Ins. Anal.
☐ 9. Business Analysis
☐ 10. Employee Ben. Anal.
☐ 11. Other (Specify)

[Stamp: RECEIVED AUG 12 1976 HOME OFFICE NEW BUSINESS DEPT]

**IV. Needs Filled by Sale** — A. Individual
☐ 1. Savings
☐ 2. Mortgage
☐ 3. Education
☐ 4. Retirement
☐ 5. Executor's Fund
☐ 6. Wife Insurance
☐ 7. Estate Liquidity
☐ 8. Estate Replenishment
☐ 9. Estate Equalization (for beneficiaries)
☐ 10. Income Replacement
☐ 11. Charity
☐ 12. Gift
☐ 13. Other (Specify)
☐ B. Business
☐ 1. Key-Man Protection
☐ 2. 303 Stock Redemption
☐ 3. Complete Stock Redemp.
☐ 4. Buy-Sell Agreement
☐ 5. Deferred Compensation
☐ 6. Disability Income
☐ 7. Debt Clearance
☐ 8. Employee Death Benefit
☐ 9. Other (Specify)

## CONDITIONS OF THIS RECEIPT (Cont.)

**Effective Date, Insurability, and Representations.** Insurance under each policy applied for in the accompanying Part I insurance application shall become effective on the latest date (herein called "Effective Date") of the following dates applicable with respect to such policy: (a) the date of said Part I application, (b) the date of the later of the initial Part II or Part III application, if such application(s) is/are required in conjunction with said Part I application, (c) the date of the later of the second Part II or Part III application if such application(s) is/are required in accordance with the Company's published rules because of the amount applied for, (d) the later date requested in said Part I application and approved by the Company; provided that on said Effective Date the Proposed Insured was, in the opinion of the Company's authorized officers, insurable and otherwise acceptable as a standard risk for such policy in the amount, on the plan, and in every respect exactly as applied for; and further provided that all statements and answers in said Part I application and any Part II or Part III applications were true and complete to the best of the knowledge of the Proposed Insured and Applicant, respectively, on the latest applicable date described above in (a), (b) or (c) of this paragraph.

**Overpayment or Underpayment.** If insurance becomes effective and if less than the full first premium has been paid, the remainder may be paid within 60 days after said Effective Date without further evidence of insurability. If the remainder is not paid, such insurance will continue for such time as sum(s) paid will purchase. If more than the first full premium has been paid, such insurance, the excess will be returned to the applicant. If the Company declines to issue the insurance so applied for, the sum paid will be returned to the Applicant, or, if the Company is willing to accept an application from the Proposed Insured for a different policy, it will apply such sum toward the premium on such other policy as specified in this Receipt but only after its authorized officers shall have received and approved a new specific application for such policy in the amount, on the plan, and in every respect as then applied for. The return of such sum(s) shall be effectively tendered if made by delivering or mailing the same to the Applicant to his address in said Part I application. If more than one policy has been applied for, all Conditions of this Receipt apply with respect to the amount paid toward each policy as specified in the appropriate space.

**Effective Date of Insurance if Conditions are not met.** Any insurance applied for under such application which cannot become effective under this Receipt may, if not declined by the Company, become effective under conditions governing issuance as provided in the agreements in Part I of said application. Such conditions provide for insurance to become effective only after (a) payment of the full first premium, and (b) the truth and completeness, without material change since Part I was signed, to the Applicant's knowledge at the time of payment of the premium, of the statements and answers given in said Part I (or in any Part II or Part III applications).

ULP2014

# Unionmutual

Insurance Application to
☐ Union Mutual Life Insurance Co.
☒ Unionmutual Stock Life Insurance Co. of America

*To be completed by Agent, if non-medical, or by Medical Examiner, if medical.*

1. Full name of Proposed Insured: **Curtis W. Baker, D.M.D.**  a. Birthdate: **2-5-36**

   FULL DETAILS OF "YES" ANSWERS
   (Include date, duration, treatment, names of physicians and hospitals — identify by number.)

   | | YES | NO |
   |---|---|---|
   | 2. HAVE YOU EVER | | |
   | a. applied for insurance which was declined, postponed, rated or modified in any way? | ☐ | ☒ |
   | b. been rejected, deferred, or discharged from military service for physical or mental reasons? | ☐ | ☒ |
   | c. changed occupation or residence because of health? | ☐ | ☒ |
   | d. used narcotics or sedatives habitually or been treated for alcoholism or a drug habit? | ☐ | ☒ |
   | 3. Have any of your parents, brothers or sisters had diabetes? | ☐ | ☒ |
   | 4. Have you any deformity, amputation or impairment of sight or hearing? | ☐ | ☒ |
   | 5. a. Have you had a physical check-up within 5 years? (Give names of physicians, dates and reason for last examination.) | ☒ | ☐ |
   | b. Did any complaints or symptoms prompt the examination? | ☐ | ☒ |
   | c. Were you given any treatment, prescription or advice? | ☐ | ☒ |
   | 6. HAVE YOU EVER HAD: | | |
   | a. a surgical operation? | ☐ | ☒ |
   | b. surgery advised and not yet performed? | ☐ | ☒ |
   | c. treatment or observation in a hospital, clinic or sanitarium? | ☐ | ☒ |
   | 7. HAVE YOU EVER BEEN TREATED FOR OR HAD ANY KNOWN INDICATION OF: | | |
   | a. high blood pressure? | ☐ | ☒ |
   | b. pain, pressure or discomfort in the chest, palpitation, heart murmur, rheumatic fever or other disorder of the heart? | ☐ | ☒ |
   | c. anemia, varicose veins or other disorder of the blood or blood vessels? | ☐ | ☒ |
   | d. asthma, pleurisy, tuberculosis or other disorder of the lungs or respiratory system? | ☐ | ☒ |
   | e. epilepsy, convulsions, recurrent dizziness, fainting spells, paralysis, mental illness, nervous breakdown or other disorder of brain or nervous system? | ☐ | ☒ |
   | f. hernia, ulcer or other disorder of the stomach, gallbladder, liver, intestines or rectum? | ☐ | ☒ |
   | g. diabetes, thyroid or other glandular disorder? | ☐ | ☒ |
   | h. arthritis, back trouble, gout or other disorder of the skin, bones or joints? | ☐ | ☒ |
   | i. a polyp, tumor or cancer? | ☐ | ☒ |
   | j. sugar, albumin or blood in your urine? | ☐ | ☒ |
   | k. nephritis, kidney stones, prostatitis or other disorder of the genitourinary system? | ☐ | ☒ |
   | l. any disorder of eyes or ears? | ☐ | ☒ |
   | 8. OTHER THAN AS MENTIONED ABOVE, HAVE YOU IN THE LAST 5 YEARS: | | |
   | a. consulted or been treated by a doctor? | ☐ | ☒ |
   | b. had an x-ray, electrocardiogram or other special test? | ☐ | ☒ |
   | c. had any disease, illness, injury or impairment? | ☐ | ☒ |

9. FAMILY RECORD

   | | LIVING | | DEAD | |
   |---|---|---|---|---|
   | | AGE | HEALTH | AGE | CAUSE OF DEATH |
   | Father | 65 | Excellent | | |
   | Mother | 61 | Excellent | | |
   | Brothers No. Living | | None | | |
   | No. Dead | | | | |
   | Sisters No. Living | | None | | |
   | No. Dead | | | | |
   | Spouse | 27 | Excellent | | |

10. Complete if female
    a. If pregnant, give expected date of delivery:
    b. Have you ever had any disease or disorder of the generative organs or breasts? If yes, give details.

11. Complete if non-medical
    a. Height ___ ft ___ in
    b. Weight ___ lbs
    c. Weight change during past year ___ lbs
    d. Cause

I hereby declare that all the statements and answers to the above questions are complete and true to the best of my knowledge and belief, and I agree that they shall form a part of the contract of insurance applied for, and I hereby authorize any licensed physician, medical practitioner, hospital, clinic, or other medical or medically related facility, any insurance company, the Medical Information Bureau, or any other organization, institution or person that has any records or knowledge of me or my health to give to ☐ Union Mutual Life Insurance Company and/or ☒ Unionmutual Stock Life Insurance Co. of America any such information. A photographic copy of this authorization shall be as valid as the original.

Signed at _____ this ___ Day of _____

Witness (Agent/Medical Examiner)       Signature of Proposed Insured

N550175

ULP2016



**REQUEST FOR POLICY CHANGE OR REINSTATEMENT (HEALTH)**

NOV 07 1991 — UNUM Life Insurance Company of America

Print or Type Name of Insured: Curtis Butler

The undersigned hereby requests that policy number LA7255-016 be modified as checked below:

1. Add, remove, or change the following coverage(s):

| Add | Remove | Change | Type of Coverage | New Amt. | Old Amt. |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | Future Ins. Option | $ | $ |
| ☐ | ☐ | ☐ | Additional Ins. Option | | |
| ☐ | ☐ | ☐ | Add. Mon. Benefit | | |
| ☐ | ☐ | ☐ | Deferred Mon. Benefit | | |
| ☐ | ☐ | ☐ | Lifetime Accident | | |
| ☐ | ☐ | ☐ | Lifetime Sickness ☐ Age 60 ☐ Age 65 | | |
| ☐ | ☐ | ☐ | Lifetime Loss of Use | | |
| ☐ | ☐ | ☐ | Non-Disabling Injury | | |
| ☐ | ☐ | ☐ | Partial Accident | | |
| ☐ | ☐ | ☐ | Partial Sickness | | |
| ☐ | ☐ | ☐ | Recovery Benefit | | |
| ☒ | ☐ | ☐ | Residual Benefit | | |
| ☐ | ☐ | ☐ | Other (Specify) | | |
| | | | Cost of Living ☐ 6% ☐ 10% ☐ 1 yr ☐ 2 yr | | |

2. Make the following change(s):
   - ☐ Change elimination period on policy to _____ days Accident; _____ days Sickness
   - ☐ Change elimination period on Add. Mon. Benefit to _____ days
   - ☐ Change elimination period on Deferred Mon. Benefit to _____ days
   - ☐ Change maximum benefit period on policy to _____
   - ☐ Change maximum benefit period on Add. Mon. Benefit to _____
   - ☐ Remove Step Rate Premium Rider (Unless requested otherwise, coverage will continue, with no change, for the level premium rate applicable to the attained age of the Insured.)
   - ☐ Change beneficiary to _____

   ☐ Add to covered person(s):
   Name _____ Relationship _____ Date of Birth _____ Sex _____

   ☐ Remove from covered person(s):
   Name _____ Date of Birth _____

   ☐ Other (Specify) _____

Note: Complete both sides for Reinstatement, adding benefits or covered person(s), and any other change which increases premiums.

**APPLICATION TO REINSTATE POLICY**

The undersigned hereby applies for reinstatement of policy number _____ and all coverages provided by rider.

IT IS UNDERSTOOD AND AGREED THAT: (1) No policy change or reinstatement will become effective until the full first premium has been paid to the Company during the lifetime of the Insured. (2) If the Company's usual rules require evidence of insurability and the Company does not waive such requirement, this request must be approved by the Company at its Home Office and the premium paid while there is no change in such insurability. (3) (a) If this application is for reinstatement, the representations made herein and in any Part II or other application required in conjunction herewith will be contestable for a period of two years from the date of reinstatement. (b) If this application is a request to change the policy, such representations will be contestable for a period of two years from the effective date of the change but only with respect to an increase in or addition of benefits. (4) If this request is not approved, any payment received will be refunded to the Owner.

Signed at Clanton, AL                                 Date Signed Nov 7, 1991

Witness _____     Signature of Agent _____     Signature of Insured _____

Signature of Owner (if other than Insured) _____