

## INSURING PROVISION

In consideration of the application herefor, a copy of which is attached hereto and made a part hereof, and the payment in advance of the premium specified in the Schedule, Unum Life Insurance Company of America does hereby insure the above-named Insured, subject to all the provisions, exceptions and reductions contained herein, attached hereto or endorsed hereon, against loss resulting from certain monthly business expenses incurred by the Insured during a period of total disability caused by:

    (a)  Sickness or disease of the Insured which first manifests itself while this policy is in force, hereafter called "sickness," or

    (b)  Accidental bodily injury occurring while this policy is in force, hereafter called "injury."

Coverage hereunder shall begin on the Policy Date.

## NOTICE OF TEN DAY RIGHT TO EXAMINE POLICY

Within ten days after its delivery to the Insured, this policy may be surrendered by delivering or mailing it to the Home Office at Portland, Maine, or to any branch office or to the agent through whom it was purchased. Upon such surrender, the Company will return any premium paid and the policy shall be deemed void from the Policy Date.

The provisions written or printed by the Company on the following pages hereof are a part of this policy.

**In Witness Whereof,** the Unum Life Insurance Company Of America has caused this policy to be signed by its President and Secretary and countersigned by a Licensed Resident Agent on the Policy Date.

*Kevin J. Tierney*                                                             
                     *Secretary*                                                        *President*

Examined by ................................................      Countersigned by ...............................................................
                                                                           *Licensed Resident Agent*

## NONCANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65
## QUALIFIED RIGHT OF RENEWAL THEREAFTER TO AGE 72.

DEFENDANT'S EXHIBIT 7

BOE1001

Form No. CIH 9-70                                   *Printed in U.S.A.*                                           1050-71 (4/99)

## RENEWAL PROVISION

**Renewal Provision.** The first premium under this policy in the amount shown in the Schedule is payable on the Policy Date and will continue the policy for the term specified, subject to the grace period provided herein. The policy may be continued thereafter for like terms by the periodic payment of renewal premiums as specified in the Policy Schedule until the policy anniversary on or next following the sixty-fifth birthday of the Insured when the coverage hereunder shall terminate with respect to any disability incurred thereafter except as provided by the "Policy Continuance After Age 65" provision.

Until the policy anniversary on or next following the Insured's sixty-fifth birthday, the only condition for the renewal of this policy is the timely payment of premiums as herein required. While this policy is maintained in force, and before the anniversary on or next following the Insured's sixty-fifth birthday, the Company cannot cancel the policy, increase the premiums in the Policy Schedule, reduce benefits because of change to a more hazardous occupation or place any restrictive rider hereon.

**Policy Continuation After Age 65.** The Insured has the right, by the timely payment of required premiums, to continue this policy beyond the anniversary on or next following his sixty-fifth birthday, for as long as he is regularly and gainfully employed on a full-time basis, in the course of his regular business or the practice of his regular profession, but not beyond the policy anniversary on or next following his seventy-second birthday. If the Company accepts a premium which covers any period of one year or less beginning on or after the policy anniversary on or next following the Insured's seventy-second birthday, coverage under this policy will continue until the end of such period.

Premiums payable on and after the anniversary on or next following the Insured's sixty-fifth birthday will be based on the Company's table of rates then in effect for the Insured's attained age. The Company's table of rates may be changed at any time, but the change shall apply only to premiums due after the effective date of the change, and no change will be made in the premium for this policy which does not also apply to all other persons of the same attained age and rating classification covered under policies of this form.

During such continuance, the Company may at any time require proof that the Insured continues to be regularly and gainfully employed on a full-time basis. If the Insured ceases to be so employed (except by reason of Total Disability), this policy will terminate as of the date of cessation of employment, and the Company will refund the pro-rata portion of any premium paid for any period beyond said termination date. Such termination shall be without prejudice to any loss sustained prior to the effective date thereof.

## DEFINITIONS

Wherever used in this policy:

"Total Disability" means the inability of the Insured to perform the duties of his regular occupation; however, the total loss by the Insured of the use of both hands or both feet or one hand and one foot or the total loss of speech or hearing of both ears or sight of both eyes shall be deemed to constitute "Total Disability" so long as such total loss of use, speech, hearing or sight shall continue, irrespective of whether the Insured engages in his or any other gainful occupation;

"Covered Overhead Expenses" shall include the charges incurred by the Insured in the operation of his office or business, or in the event of joint occupancy, the Insured's share of such expenses for rent, electricity, telephone, heat, water, laundry, depreciation, employees' salaries and such other fixed expenses as are normal and customary in the care and operation of his office or business. "Covered Overhead Expenses" shall not include salary, fees, drawing account or any other remuneration for the Insured or any member of the Insured's profession, or family, or a partner employed by or working with the Insured, or cost of goods, wares, merchandise of any nature, implements of the Insured's profession or occupation, or payments on mortgage principal or any kind of expense for which the Insured was not liable in the regular course of such operation immediately preceding the commencement date of Total Disability.

"Elimination Period" means the number of days at the beginning of the period of Total Disability, commencing with the first day thereof, for which no benefits are payable.

## BENEFIT PROVISIONS

**Overhead Expense Total Disability Benefit.** If, as the result of sickness or injury, the Insured suffers Total Dis-

(Continued on page 5)

BOE1002

05/24/2005

POLICY SCHEDULE

|  |  |
|---|---|
| INSURED | CURTIS W BAKER DMD |
| POLICY NUMBER | LA N550175 |
| POLICY DATE | SEPTEMBER 20, 1976 |
| PREMIUM TERM | QUARTERLY |
| INITIAL PREMIUM* | $ 70.20 |

RENEWAL PREMIUMS     $ 261.04 PAYABLE QUARTERLY UNTIL 09-20-2010.

MAXIMUM MONTHLY OVERHEAD EXPENSE BENEFIT $3,000.00

ELIMINATION PERIOD- 14 DAYS.

MAXIMUM BENEFIT PERIOD- 24 MONTHS.

DUPLICATE

CIH9-70                    PAGE 3

BOE1003

## BENEFIT PROVISIONS — Continued

ability, requiring the attendance of a legally qualified physician other than himself, that begins while this policy is in force, the Company will periodically reimburse the Insured for the Covered Overhead Expenses actually incurred by him as defined herein but not to exceed the Maximum Overhead Expense Benefit stated in the Policy Schedule, commencing with such expenses as are incurred by him after the expiration of the Elimination Period specified in the Policy Schedule.

If a reduction in expenses causes the benefits to be payable at a lesser rate than the Maximum Monthly Overhead Expense Benefit, such payments will continue until the total amount of benefits paid for such disability is equal to the Maximum Monthly Overhead Expense Benefit specified in the Policy Schedule multiplied by the number of months for Maximum Benefit Period specified in the Policy Schedule, but in no event shall the number of such monthly payments exceed twice such number of months for the Maximum Benefit Period.

The amount of benefit payable hereunder on account of Total Disability for a fractional part of a month shall be the lesser of the monthly Covered Overhead Expenses incurred during the whole month or the Maximum Monthly Overhead Expense Benefit divided by the number of days in such month, and the quotient shall be multiplied by the number of days of continuous Total Disability suffered by the Insured in such month.

**Transplant Donor Benefit.** If, commencing while this policy is in force and more than twenty-four months after the Policy Date, the Insured suffers Total Disability resulting from the transplant of a part of his body to the body of another, the required transplant surgery shall be considered as a sickness in the determination of any benefits payable under the terms of this policy.

**Recurrent Disability.** If, following a period of disability due to sickness or injury, the Insured shall resume his regular occupation, or commence any occupation for which he is reasonably fitted, and shall perform on a full-time basis all the important duties thereof for a continuous period of six months or more, any subsequent disability compensable under this policy resulting from the same cause or causes shall be considered as a new period of disability and paid in accordance with the appropriate provisions of this policy, but if said period during which the Insured resumes such occupation shall be less than six months such subsequent disability shall be deemed a continuation of the original disability and the Company's liability for the entire period shall be subject to the limitations applicable in the part or parts of this policy under which the original period of disability was payable.

**Waiver of Premium for Disability Commencing Prior to Age 65.** After any Total Disability that commences prior to the policy anniversary on or next following the Insured's sixty-fifth birthday has continued for ninety consecutive days, the Company will refund any premiums due and paid during the continuance of such Total Disability

and will waive all premiums coming due during such Total Disability. Following such a period of disability during which the Company has waived premiums, the insurance provided in this contract shall continue in full force and effect until the next premium due date, at which time the Insured shall have the right to resume payment of premiums as they become due.

**Conversion Privilege.** At any time while the Insured is not disabled and is regularly and gainfully employed on a full-time basis and prior to the policy anniversary next following his sixtieth birthday, the Insured may exchange this Overhead Expense Policy for any noncancellable monthly indemnity policy regularly issued at the date of exchange subject to the following conditions with respect to such new policy:

1. The effective date of the new policy will be the date the written request for the exchange is received by the Company at its Home Office, except that for the purposes of the incontestable provision, the date of the new policy will be the date of issue of this Overhead Expense Policy;

2. The premium on the new policy will be based on the class of risk, sex and age of the Insured on the date of issue of the Overhead Expense Policy;

3. The Maximum Monthly Benefit Period on the exchanged policy will not be greater than 2 years and the Elimination Period will not be less than that on this policy;

4. The Monthly Benefit shall not exceed the lesser of (a) the Maximum Monthly Overhead Expense Benefit provided by this policy or (b) an amount which together with similar benefits under all other loss of time coverage with this or any other insurer does not exceed the maximum disability income coverage being offered by the Company to new applicants of the Insured's classification of risk according to the Company's then published underwriting and participation limits;

5. If the Insured is disabled within the six months period prior to the date of exchange, the new policy will not cover any disability resulting from the same cause or causes until the Insured has been regularly and gainfully employed on a full-time basis for a continuous period of six months;

6. The new policy will cover benefits only for such losses as shall occur while it is in force, and may exclude any condition excluded by the Overhead Expense Policy.

## EXCEPTIONS

This policy does not cover any loss caused by war or any act of war, whether declared or undeclared; nor any loss resulting from pregnancy, childbirth or miscarriage.

## GENERAL PROVISIONS

**Entire Contract: Changes.** This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall

**GENERAL PROVISIONS — Continued**

be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

**Incontestable.** (a) After this policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the application; and (b) No claim for loss incurred or disability (as defined in this policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from the coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

**Grace Period.** A grace period of thirty-one days will be granted for the payment of each premium falling due after the first premium, during which grace period this policy shall continue in force.

**Reinstatement.** If any renewal premium be not paid within the time granted the Insured for payment, a subsequent acceptance of premium by the Company or by any agent duly authorized by the Company to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate this policy; provided, however, that if the Company or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, this policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the Insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date. In all other respects, the Insured and the Company shall have the same rights thereunder as they had under this policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement.

**Notice of Claim.** Written notice of claim must be given to the Company within thirty days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Insured or the beneficiary (if designated in this policy) to the Company at its Home Office in Portland, Maine, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

**Claim Forms.** The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice, the claimant shall be deemed to have complied with the re-

quirements of this policy as to proof of loss upon submitting, within the time fixed in this policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proofs of Loss.** Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Company is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

**Time of Payment of Claims.** Benefits payable under this policy for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon receipt of due written proof of such loss. Subject to due written proof of loss, all accrued benefits for loss for which this policy provides periodic payment will be paid monthly and any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof.

**Payment of Claims.** All benefits will be paid to the Insured, if living, if not, to his estate.

If any benefit of this policy shall be payable to the estate of the Insured, or to an Insured or other person who is a minor or otherwise not competent to give a valid release, the Company may pay such benefit, up to an amount not exceeding $1,000, to any relative by blood or connection by marriage of the Insured or other person who is deemed by the Company to be equitably entitled thereto. Any payment made by the Company in good faith pursuant to this provision shall fully discharge the Company to the extent of such payment.

**Physical Examinations.** The Company, at its own expense, shall have the right and opportunity to examine the person of the Insured, when and as often as it may reasonably require, during the pendency of a claim hereunder.

**Legal Actions.** No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Misstatement of Age.** If the age of the Insured has been misstated, all amounts payable under this policy shall be such as the premium paid would have purchased at the correct age.

If, because of misstatement of the Insured's age, the Company shall accept any premium which falls due on a date

## GENERAL PROVISIONS — Concluded

when, according to the correct age, this policy would not have been issued or the coverage under this policy would have ceased, then the liability of the Company shall be limited to the refund, upon request, of all premiums paid for the period not covered by this policy.

**Conformity with State Statutes.** Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the Insured resides on such date, is hereby amended to conform to the minimum requirements of such statutes.

**Payment of Premiums.** All premiums are payable in advance, subject to the terms of the grace period provided herein, at the Home Office of the Company in Portland, Maine, or to any authorized agent of the Company. Premiums may be paid annually, semi-annually or quarterly in advance in accordance with the Company's premium rates in force on the effective date of this policy, as elected in the application herefor and, except in any period during which the Insured is totally disabled, the mode of premium payment may be changed on any anniversary of the effective date of this policy upon request approved in writing by the Company at its Home Office. The payment of any premium shall not continue this policy in force beyond the date when the next premium is due and payable, except as may be otherwise provided by said grace period.

**Military Service Provision.** If the Insured becomes a member of the armed forces of any country or military authority, or a member of any civilian noncombatant unit serving such forces, he may elect to continue or suspend this policy. Upon receipt of written notice by the Company that the Insured has elected to suspend this policy, the Company will refund that portion of the premium which would have provided coverage for the period following the date such notice was received by the Company.

If, within five years from the date on which this policy was so suspended, the Insured terminates his full-time active duty, the policy will be reinstated without evidence of insurability, on receipt by the Company of (a) written election of reinstatement and (b) payment of the pro-rata unearned premium covering the period from the termination of such active duty to the next premium due date.

If the Insured does not terminate his full-time active duty within five years from the date on which this policy was suspended, or if he does not reinstate this policy within 90 days following termination of his full-time active duty, he may reinstate this policy then only in accordance with the Reinstatement provision herein.

**Premium Refund at Death.** In the event of the death of the Insured while this policy is in force, the Company will refund, on a pro-rata basis, any unearned premium paid by the Insured. Such refund may, at the option of the Company, be paid to the estate of the Insured or to any other person to whom policy benefits may be payable and under the same conditions of such payment.

**Assignment.** No assignment of interest under this policy shall be binding upon the Company unless and until the original or a duplicate thereof is filed with the Company at its Home Office. The Company will assume no responsibility for the validity or sufficiency of any assignment.

BOE1006

**Continental**

1. Proposed Insured (Print last name, first name and initial)

*Curtis W. Baker, DMD*

2. Address (Street & No., RFD, City, County, State and Zip Code)    Send Notices
   a. Home  _RT D Dublin Alabama_
   b. Business  _W Baker Ave Enterprise_

6. Occupation (include specific duties)    Name of Employer and Address if different than above
   *Dentist (G.P.)*    *Self*

7. Owner, if other than Proposed Insured    State of Incorp. or Partnership    Address

*Same*

8. HAVE YOU:

|  | YES | NO | Give details of each "Yes" answer |
|---|---|---|---|
| a. Ever received or claimed benefits or a pension for sickness, injury or impairment? | ☐ | ☒ | |
| b. An application for life or health insurance now pending in another company? | ☐ | ☒ | |
| c. Flown or do you expect to fly as, a pilot or crew member of any aircraft? | ☐ | ☒ | |
| d. Any intention of traveling or residing outside the U.S. or Canada? | ☐ | ☒ | |
| e. Any expectation of military service within 6 months? | ☐ | ☒ | |
| f. Engaged in underwater diving below forty feet, parachuting, motor vehicle racing, or do you intend to do so? | ☐ | ☒ | |

9. Insurance in force on Proposed Insured (if none, write none)

| Company | Year Issued | Life | Accidental Death | Monthly Income | Sickness | Accident |
|---|---|---|---|---|---|---|
| Met N.Y. | 62 | 10,000 | | | | |
| Penn Life | 68 | 30,000 | | | | |
| Farm Bureau | 65 | 30,000 | | | | |
| Nat Life | 66 | 25,000 | | | | |
| Aid Life | | | | | | |

**COMPLETE ITEMS 10-15 AND 21, IF NECESSARY, WHEN APPLYING FOR LIFE INSURANCE**

10. Plan    Amt.

Optional Benefits
☐ Waiver of Premium, if eligible
☐ Accidental Death Benefit $
☐
☐
☐

Amt. of Ins. (incl. any benefits checked above) Purchasable by
$_____ Prem. based on mode checked in item 11

11. Premium: Ann. ☐ S.A. ☐ Quar. ☐ Mo. ☐ PAC ☐ Sal. Ded. ☐ Gov. ☐ Allot. ☐
Payable

12. Amt. Paid for Life Ins. with this App. $

13. Automatic Premium Loan Privilege will be effective when this box is checked ☐

14. Beneficiary(ies) With Right of Change. Give name(s) and relationship(s)

Primary:

Contingent:

15. Will this insurance replace any insurance or annuity in this or any other Company? ___ Company

BOE1007

Maximum Benefit Period:
  Sickness _____ Accident _____
Elimination Period:
  Sickness _____ Accident _____
  Other _____

17. Premiums  Ann ☐  S.A. ☐  Quar. ☒  PAC ☐  Sal. Ded ☐
    Payable

18. Amount paid for Health Insurance with this Application
    $ _____

19. Will any Health Insurance be discontinued if this policy is
    issued?  ☐ Yes  ☐ No   If yes, give:
    Company _____  Amount _____  Date of Termination _____

20. Beneficiary(ies)  Give full name and relationship
    (for Acc. Death Benefit only)

21. SPECIAL REQUESTS (use with Life or Health Ins.)

22. FOR HOME OFFICE USE ONLY

IT IS UNDERSTOOD AND AGREED by the undersigned Proposed Insured and Applicant that: (1) The statements and answers made
herein together with those in each Part II or Part III hereof are, to the best of my own knowledge and belief, true and correctly
correctly recorded, and are offered to induce the Company to issue the policy(ies) applied for. (2) No agent, broker, or medical examiner
or employee except an authorized Company employee at its Home Office has authority to determine insurability or make any
any contract of insurance, or to waive any requirement of the Company. (3) Except as provided under the Conditional Receipt
hereof identically herewith (if such Receipt has been given to Applicant), no insurance applied for hereunder shall take effect
unless the policy shall have been issued by the Company and the first premium paid in full thereon, and then only if the statements
and answers referred to in Item (1) above would represent, without material change, to the best of my own knowledge, true
and complete answers to the same questions, on such payment date. (4) If such Receipt has been given to Applicant,
EVERY CONDITION OF THE RECEIPT MUST BE MET BEFORE ANY INSURANCE BECOMES EFFECTIVE. (5) No statement
or changes made by the Company shall be effective unless agreed to in writing by the Applicant. (6) The Applicant for any policy
issued hereon shall be the Proposed Insured, unless another person or firm shall execute this application below, and for
any insurance policy issued hereon providing for ownership the Proposed Insured shall be the Owner unless otherwise stated.

Signed at _____  Date signed _____

Witness _____
        Signature of Soliciting Agent        Signature of Proposed Insured

_____
General Agent or Manager        Applicant (Name if other than insured)

141424

Form No. 91701(2)        16 (Rev. USA)

BOE1008

1. What is her source of income _____
2. Who will pay premiums? _____
3. If married give husband's name _____
4. His occupation _____ Annual Income _____

## SECTION 2    Complete if Application is for Business Insurance

1. Is the Applicant a ☐ Corporation ☐ Partnership ☐ Individual    Explain why Applicant is insurable interest in Insured
2. If Applicant is a Partnership, list names of all partners _____

5. Has similar insurance been purchased by other stockholders, officers or partners? Give detail _____

3. Insurance now in force on Proposed Insured in favor of Applicant
$ _____

## SECTION 3    Complete for All Cases

1. Previous addresses of Proposed Insured during last 2 years (5 yrs. if $20,000 or more)
   Residence _____ From _____ To _____
   _____ From _____
   Business _____ From _____
   _____ From _____
2. Other occupations of Proposed Insured during last 5 years and how long in each _____
3. How well and how long have you known Proposed Insured? _____
4. If beneficiary is not a close relative, employee or business associate, explain the insurable interest _____
5. What is your estimate of Proposed Insured's financial worth?  Net Worth $ _____  Earned Income $ _____  Other Income $ _____
6. Occupational classification for Health Ins. _____    7. Do you unqualifiedly recommend approval of this Application? _____
8. Is this a replacement life policy? _____ Have State regulations regarding a replacement been met? ☐ Yes ☐ No
9. Applicant's Educational Level: ☐ Grammar ☐ High School ☐ College ☐ Post Graduate
10. Age of Spouse _____ Age(s) and Sex of Children _____
11. If this application is prepaid, check payment method: ☐ Cash ☐ Check ☐ Money Order ☐ Other _____
12. Remarks _____

## CONDITIONAL RECEIPT — INDIVIDUAL LIFE OR HEALTH

Amount(s) Received: $ _____ for proposed life insurance  $ _____ for proposed health insurance

NO INSURANCE WILL BECOME EFFECTIVE UNLESS EACH AND EVERY CONDITION AND REQUIREMENT OF THIS AND REVERSE SIDE OF THIS CONDITIONAL RECEIPT IS FULFILLED EXACTLY.  NO AGENT, BROKER, MEDICAL EXAMINER, EMPLOYEE OF THE COMPANY EXCEPT A COMPANY OFFICER AT ITS HOME OFFICE IS AUTHORIZED TO ALTER OR WAIVE ANY PROVISION OF THIS CONDITIONAL RECEIPT.  NOTICE — This Receipt is not valid (a) with respect to any payment as temporary term insurance premium, or (b) if payment made toward the first policy premium is less than 1/12 of the annual premium or less than $7.50.

Received from _____ the sum of $ _____
to be applied toward the first premium(s) as proposed above and on a Part I insurance application numbered identically above.
This Receipt shall not be valid if any check, draft, or money order given for it is not honored.

Dated at _____
this _____ day of _____ 19 ____

Issued by: The Unionmutual Stock Life Insurance Co. of America
By _____ Title _____

This Receipt shall be void if altered in any way.  Only an Agent, Broker, Office Supervisor or Manager of an area is authorized to sign this Receipt.

141424

## CONDITIONS OF THIS RECEIPT

Limit of Liability  The Company shall not be liable for any amount of insurance, which together with accidental death benefits but excluding group insurance, now pending, issued by the Company in excess of $100,000.  Any amount in excess of such limit may become effective only subject to the Conditions of this Receipt on the reverse side hereof.

Suicide  In the event of suicide of the insured between the date of the Part I application and the date of any premium payment to the Company, this is limited to a return of any premium paid.

Name _____ Agent or Broker    Commission % Interest

Date _____ , 19 76

I have personally reviewed the statements made by Proposed Insured and Applicant, and those given in the foregoing application, and am satisfied that this application has been properly completed.

Date _____ , 19 76

## ATLANTA
## MARKETING INFORMATION

**I.** A. If application is for both, which was Primary Sale? ☐ Life  ☐ Disability Income
  B. Is policy Split Dollar? ☐ Yes ☐ No    Minimum Deposit ☐ Yes ☐ No
  C. If security involved in sale, please specify: ☐ Mutual Fund  ☐ Variable Annuity ☐

**II. Source of Applicant:**
☐ A. Approached me          ☐ E. Direct Mail Replier        ☐ J. Securities Customer
☐ B. Cold Canvass           ☐ F. Direct Mail Non-Replier    ☐ K. Discovered While Servicing
☐ C. Referral               ☐ G. Salary Savings Case          ☐ 1. Group Case      ☐ 3. Established Client
☐ D. Personal Acquaintance  ☐ H. Orphan Policyowner          ☐ 2. Pension Case    ☐ 4. Policy or Stock Purchase
                                                            ☐ L. Other

**III. Type of Sales Track Used:**
☐ A. Single Need (Direct Policy Sale)          Planning Service
☐ B. Ideal Property Track                       ☐ 1. One Interview Ins. Program      ☐ 7. Dr. Income Program
  ☐ 1. Hill of Life                             ☐ 2. Two Interview Ins. Program      ☐ 8. Computerized Ins. Prog.
  ☐ 2. Insured Savings                          ☐ 3. Computerized Ins. Prog. (I.P.S.) ☐ 9. Business Analysis
  ☐ 3. Ledger Statement                         ☐ 4. Ins. & Finan. Planning (P.I.P.) ☐ 10. Employee Benefit Program
  ☐ 4. Other (Specify)                          ☐ 5. Estate Planning (Corp. Co-ord.) ☐ 11. Other (Specify)
☐ C. Joint Securities — Ins. Sale               ☐ 6. Computerized Estate Planning

AUG 19 1976  RECEIVED

**IV. Needs Filled by Sale:** ☐ A. Individual                          ☐ B. Business
  ☐ 1. Savings          ☐ 8. Estate Replenishment       ☐ 1. Key-Man Protection       ☐ 8. Employee Death Benefit
  ☐ 2. Mortgage         ☐ 9. Estate Equalization         ☐ 2. 303 Stock Redemption     ☐ 9. Other (Specify)
  ☐ 3. Education           (for beneficiaries)            ☐ 3. Complete Stock Redemp.
  ☐ 4. Retirement       ☐ 10. Income Replacement         ☐ 4. Buy-Sell Agreement
  ☐ 5. Executor's Fund  ☐ 11. Charity                    ☐ 5. Deferred Compensation
  ☐ 6. Wife Insurance   ☐ 12. Gift                       ☐ 6. Disability Income
  ☐ 7. Estate Liquidity ☐ 13. Other (Specify)            ☐ 7. Debt Clearance

## CONDITIONS OF THIS RECEIPT (Cont.)

**Effective Date, Insurability, and Representations.** Insurance under each policy applied for in the accompanying Part I application shall become effective on the latest date (herein called "Effective Date") of the following dates: contingent upon such policy: (a) the date of said Part I application, (b) the date of the later of the initial Part II or Part III application, if application(s) is/are required in conjunction with said Part I application, (c) the date of the later of the second Part II or Part III application(s) if such application(s) is/are required in accordance with the Company's published rules because of the amount applied for or interstate requested in said Part I application and approved by the Company, provided that on said Effective Date the Proposed Insured is, in the opinion of the Company's authorized officers, insurable and otherwise acceptable as a standard risk for the kind, amount, on the plan, and in every respect exactly as applied for, and further provided that all statements contained in said application and any Part II or Part III applications were true and complete to the best of the knowledge of the Proposed Insured and Applicant, respectively, on the latest applicable date described above in (a), (b) or (c) of this paragraph.

**Overpayment or Underpayment.** If insurance becomes effective and if less than the full first premium for the kind, amount and plan remainder may be paid within 60 days after said Effective Date without further evidence of insurability and such insurance will continue for such time as (sums) paid will purchase. If more than the first full premium is paid, the excess will be returned to the applicant. If the Company decides to issue the insurance as applied for the amount paid will be returned to the Applicant, or, if the Company is willing to accept an application for another kind of policy, it will apply such sum toward the premium on such other policy as specified in the Applicant's application, after it shall have received and approved a new specific application for such policy to the extent and exactly as then applied for. The return of such sum(s) shall be effectively tendered if sent by check payable to the Applicant to his address in said Part I application. If more than one policy is applied for and if the sum(s) tendered as the amount paid toward a policy or policies ...

**Other Dates of Insurance if Conditions are not met.** Any insurance under the policy or policies applied for ...

Unionmutual                    Supplementary Application
                        Unionmutual Stock Life Insurance Co. of America
                                              A Stock Company
                                                    Portland, Maine

## OVERHEAD EXPENSE DISABILITY POLICY

| | | |
|---|---|---|
| 1. | Name of Applicant? | _Carter W. Baker, D.M.D_ |
| 2. | In what business or professional name is your office operated? | _Same_ |
| 3. | How many persons share the total average monthly expenses of your office or firm and in what general proportions? | _Only Dr. Baker_ |
| 4. | What is the nature of your business organization — sole proprietorship, partnership or corporation? | _Sole proprietorship_ |

| | | COMPANY & POLICY NUMBER | | |
|---|---|---|---|---|
| 5. | What Overhead Expense coverage do you now have in force or are you currently applying for in other companies? If coverage in force, give policy number. | _None_ | | |

6. What are the current average overhead expenses incurred BY YOU or otherwise attributable to your employment (your share if you are jointly obliged to pay such overhead expenses or the share of expenses attributable to you if employed by a corporation)? Exclude compensation for yourself and any member of your profession or vocation and any expense which will not continue for at least 30 days during your disability.

| | | | |
|---|---|---|---|
| Rent | $500.00 | Depreciation $ | |
| Employees' Salaries | $4,100 | | |
| Telephone | $250.00 | | |
| Electricity | $250.00 | | |
| Heat | $ | TOTAL $ | |

IT IS UNDERSTOOD AND AGREED THAT the above representations are true and complete to the best of my knowledge and belief, and are correctly recorded, and that this Supplementary Application executed currently with the Part I Application to which it is a supplement, incorporates by reference all statements and conditions contained in said Part I Application, and shall, together with such Part I Application and such other applications as may be required by the Company, form the basis of the insurance applied for and constitute the entire Application therefor.

_E. O. Roberts_                      N550175                _Carter W. Baker_
Agent                                                      Applicant's Signature

1260-70 (7/71)                    TO BE USED WITH REG. APPLICATION

BOE1011

To be completed by Agent (agent-medical exam)

Name of Proposed Insured: **Curtis W. Baker, DMD**   (d) Birthdate: 2-5-38

FULL DETAILS OF EACH YES ANSWER
(Give date, duration, results and names of physicians and hospitals — Identify number of questions)

*Regular FAA medical for pilot certificate*

**5. HAVE YOU EVER:**

a. applied for insurance which was declined, postponed, rated or modified in any way? .................................. ☐ ☑

b. been rejected, deferred, or discharged from military service for physical or mental reasons? ......................... ☐ ☑

c. changed occupation or residence because of health? ...... ☐ ☑

d. used narcotics or sedatives habitually or been treated for alcoholism or a drug habit? .................................. ☐ ☑

e. Have any of your parents, brothers or sisters had diabetes? ☐ ☑

f. Have you any deformity, amputation or impairment of sight or hearing? ☐ ☑

**6. a.** Have you had a physical check-up within 5 years? (Give names of physicians, dates and reason for last examination.) ☑ ☐

b. Did any complaints or symptoms prompt the examination? ☐ ☑

c. Were you given any treatment, prescription or advice? ☐ ☑

**7. HAVE YOU EVER HAD:**

a. a surgical operation? ............................... ☐ ☑

b. surgery advised and not yet performed? ............. ☐ ☑

c. treatment or observation in a hospital, clinic or sanitarium? ☐ ☑

**8. HAVE YOU EVER BEEN TREATED FOR OR HAD ANY KNOWN INDICATION OF:**

a. high blood pressure? ................................ ☐ ☑

b. pain, pressure or discomfort in the chest, palpitation, heart murmur, rheumatic fever or other disorder of the heart? ☐ ☑

c. anemia, varicose veins or other disorder of the blood or blood vessels? ☐ ☑

d. asthma, pleurisy, tuberculosis or other disorder of the lungs or respiratory system? ................................ ☐ ☑

e. epilepsy, convulsions, recurrent dizziness, fainting spells, paralysis, mental illness, nervous breakdown or other disorder of brain or nervous system? .................................. ☐ ☑

f. hernia, ulcer or other disorder of the stomach, gallbladder, liver, intestines or rectum? ................................ ☐ ☑

g. diabetes, thyroid or other glandular disorder? ....... ☐ ☑

h. arthritis, back trouble, gout or other disorder of the skin, bones or joints? .............................................. ☐ ☑

i. a polyp, tumor or cancer? ............................ ☐ ☑

j. sugar, albumin or blood in your urine? ............... ☐ ☑

k. nephritis, kidney stones, prostatitis or other disorder of the genitourinary system? ................................ ☐ ☑

l. any disorder of eyes or ears? ....................... ☐ ☑

**9. OTHER THAN AS MENTIONED ABOVE, HAVE YOU IN THE LAST 5 YEARS:**

a. consulted or been treated by a doctor? .............. ☐ ☑

b. had an x-ray, electrocardiogram or other special test? ☐ ☑

c. had any disease, illness, injury or impairment? ..... ☐ ☑

| FAMILY RECORD | AGE | LIVING HEALTH | DEAD AGE | CAUSE OF DEATH |
|---|---|---|---|---|
| Father | 65 | Excellent | | |
| Mother | | | | |
| Brothers | | | | |
| No. Living | | None | | |
| No. Dead | | | | |
| Sisters | | | | |
| No. Living | | None | | |
| No. Dead | | | | |
| Spouse | | Excellent | | |

**10. Complete if female**

a. If pregnant, give ...

b. Have you ever had any disease ... generative organs or breasts?

**11. Complete if non-medical**

a. Height

b. Weight

c. Weight ...

I hereby declare that all the statements and answers to the above questions ... belief and I agree that they may form a part of the contract of insurance ... physician, medical practitioner, hospital, clinic, or other medical ... Medical Information Bureau, or any other organization ... to give to ... Union Mutual Life Insurance Company ... such information. A photographic copy of this authorization ...